IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

WINFIELD T. WILLIS,

    *Plaintiff*,

    v.

BANK OF AMERICA
CORPORATION, *et al.*,

    *Defendants*.

Civil Action No. ELH-13-02615

**MEMORANDUM OPINION**

Winfield T. Willis, the self-represented plaintiff, filed suit against defendants Bank of America Corporation ("BAC"); Bank of America, N.A. ("BANA"); "Bank of America Home Loans"; and "BAC Home Loans Servicing, LP (Countrywide Home Loans Servicing, LP)" (ECF 2, "Complaint" or "Compl.").[1]  In a twenty-two count complaint, plaintiff alleges violations of the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601 *et seq.* ("RESPA"); the Truth in Lending Act, 15 U.S.C. §§ 1601 *et seq.* ("TILA"); the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq.* ("FDCPA"); the Maryland Consumer Protection Act, Md. Code (2013 Repl. Vol.), Com. Law §§ 13–101 *et seq.* ("MCPA"); §§ 7-105.1 and 7-105.2 of the Real

---

[1] Suit was initially filed in the Circuit Court for Baltimore City. BAC and BANA removed the case to federal court pursuant to 28 U.S.C. §1441 and § 1446, invoking federal question jurisdiction under 28 U.S.C. § 1331 and diversity jurisdiction under 28 U.S.C. § 1332. *See* ECF 1.

Defendants assert: "There is no legal entity named Bank of America Home Loans."  ECF 10-1 at 1.  They note that "Countrywide Home Loans Servicing, L.P. changed its name to BAC Home Loans Servicing, L.P. effective April 27, 2009, and BAC Home Loans Servicing, L.P. merged with and into BANA on July 1, 2011."  *Id.*  Plaintiff does not challenge this assertion. As discussed, *infra*, defendants contend that BAC is improperly named as a party to the lawsuit because BAC is a holding company and does not originate or service loans.

Property Article of the Maryland Code (2010 Repl. Vol., 2013 Supp.) ("R.P."); and Maryland common law.

Pursuant to Fed. R. Civ. P. 12(b)(6), defendants filed a motion to dismiss (ECF 10), supported by a memorandum (ECF 10-1) (collectively, the "Motion"). The Motion has been fully briefed.[2] Plaintiff has moved to remand the case to state court (ECF 15, "Motion to Remand"), which defendants oppose (ECF 17). No hearing is necessary to resolve the motions. *See* Local Rule 105.6. For the reasons that follow, I will grant defendants' Motion, and I will deny plaintiff's Motion to Remand.

## Factual Background[3]

This case arises from a mortgage loan in the sum of $350,000, obtained by Winfield Willis and Patricia Lewis[4] for real property located at 2816 Hillsdale Road, Baltimore, Maryland 21207 (the "Property").[5] The loan is evidenced by a promissory note ("Note") and secured by a

---

[2] Plaintiff filed an opposition to the Motion (ECF 14), stating that he did not receive a copy of it. Defendants replied (ECF 16), noting that the Motion was accompanied by a certificate evidencing that service was effectuated upon plaintiff. Nevertheless, defendants sent an additional copy to plaintiff. Plaintiff then filed another opposition to the Motion (ECF 18, "Opposition"), addressing the substantive arguments contained in defendants' Motion. With leave of the Court, defendants again replied (ECF 20).

[3] For the purposes of this Motion, the Court accepts as true the facts alleged in the Complaint.

[4] Patricia Lewis is not a party to this lawsuit.

[5] The Complaint does not indicate whether the loan was used to finance the acquisition of the Property, or whether it was a refinancing transaction. Although defendants state that the loan was used to finance the purchase of the property, *see* ECF 10-1 at 2, the "Affidavit Made Pursuant to Section 12-108(G)(3) of the Tax-Property Article of the Annotated Code of Maryland" ("Tax-Property") (Compl. Exh. P, ECF 2-16), which is attached to the Complaint as an exhibit, suggests it was used to refinance an existing mortgage on the Property. Tax-Property § 12-108(G)(3) provides for an exemption from recordation taxes in the context of a refinancing.

deed of trust ("Deed of Trust").  *See* Compl. ¶ 4. There is a dispute as to the dates on which the instruments were executed. Plaintiff attached to the Complaint copies of two promissory notes and two deeds of trust.  One set is dated December 16, 2005, and the other set is dated January 2, 2006.  *See* Compl. Exh. S, ECF 2-18 (Note dated December 16, 2005) and Compl. Exh. R, ECF 2-18 (Deed of Trust dated December 16, 2005); Compl. Exh. J, ECF 2-10 (Note dated January 2, 2006) and Compl. Exh. O, ECF 2-15 (Deed of Trust dated January 2, 2006).  Bondcorp Realty Services, Inc. ("Bondcorp") is identified as the lender on both deeds of trust, and each designates Mortgage Electronic Registration System, Inc. ("MERS") as the nominee for the lender and the lender's successors and assigns.  Compl. Exh. O, ECF 2-15 at 1; Compl. Exh. R, ECF 2-18 at 1. Plaintiff (and not Lewis) executed each promissory note, in the amount of $350,000, providing for interest at a yearly rate of 7.250%, with monthly installment payments of $2,387.62.  Compl. ¶ 4; Compl. Exh. J; Compl. Exh. S.  Both notes also designate February 1, 2006, as the date for the commencement of monthly payments, and a maturity date of January 1, 2036.  Compl. Exh. J; Compl. Exh. S.  And, both the deeds of trust reflect the same loan number.

Plaintiff also attached to the Complaint a "Limited Power of Attorney for Correcting Typographical Errors" (Compl. Exh. Q, ECF 2-17 at 2), and a HUD-1A Settlement Statement (Compl. Exh. Q, ECF 2-17 at 1), each signed by plaintiff and dated December 16, 2005.  The Limited Power of Attorney appoints Millennium Settlement Attorneys as attorney-in-fact for plaintiff and Lewis "to correct any TYPOGRAPHICAL ERRORS, to place [their] initials on documents where changes are made and/or to sign [their] names to and acknowledge any modification or other documents correcting the typographical error."  Compl. Exh. Q, ECF 2-17 at 2.

In February 2006, plaintiff received a letter stating that Bondcorp had sold his loan on the secondary market and that the servicing of the loan had been transferred. *See* Compl. Exh. A, ECF 2-1 (Letter from Bondcorp).  Plaintiff was instructed to send all future payments to Countrywide Home Loans, Inc.  *Id.*  On April 18, 2012, the Deed of Trust dated January 2, 2006, was assigned to BANA as successor by merger to BAC Home Loans Servicing LP, f/k/a Countrywide Home Loans Servicing LP ("BAC Home Loans Servicing").  Motion Exh. A, ECF 10-2 (Assignment of Deed of Trust).[6]

According to plaintiff, defendants paid kickbacks to loan brokers such as Bondcorp for providing "predatory lending deals with higher interest rates than the market rate for minorities with good credit."  Compl. ¶ 5.  He alleges that defendants would allow Bondcorp to receive "a mortgage brokers fee on the HUD 1 at settlement, and then rewarded Bondcorp with two months in loan payments after the settlement as a bonus for providing a mortgage with a higher interest yield than what was normal and customary. . . ."  Compl. ¶ 6.  Further, plaintiff alleges that, in order to facilitate "this deceptive 'yield spread premium' kick back trade practice", defendants allowed Bondcorp to appear on the loan documents as the lender, even though defendants were the actual lender, a practice which plaintiff refers to as "table funding."  *Id.* ¶¶ 7, 8.

---

[6] The Assignment of Deed of Trust, which was recorded in the Baltimore City land records at Liber 14224, Page 484, is attached as an exhibit to defendants' Motion.  *See* Motion Exh. A, ECF 10-2.  Plaintiff has not objected to the exhibit.  In any event, because the Assignment is a public record, this Court may consider it without converting the Motion to one for summary judgment.  *See Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) ("In reviewing a Rule 12(b)(6) dismissal, we may properly take judicial notice of matters of public record.").

On April 28, 2009, a lawyer at the firm of Cohn, Goldberg & Deutsch, LLC ("Cohn") wrote to plaintiff.[7]  Plaintiff responded by letter of May 6, 2009, disputing his outstanding debt of $348,453.81 on the loan.  Compl. Exh. B, ECF 2-2 (Letter of May 6, 2009); *see* Compl. ¶ 12. Plaintiff asked Cohn to provide him with

> the copy of the Deed of Trust and Note along with where the original note is located, evidence of who funded the loan with a copy of the wire transfer and/or check from Bondcorp Realty Services, Inc. to the title company, a copy of any evidence of another lender purchasing the note from Bondcorp Realty Services with a copy of the wire transfer and/or check, and a copy of any other lender purchasing the note with evidence of the purchase by wire transfer and/or check, and a copy of any other lender purchasing the note with evidence of the purchase by wire transfer or funds or a check.

Compl. Exh. B; *see* Compl. ¶ 12.  Additionally, plaintiff asked Cohn to identify the owner of the Note.  Compl. Exh. B.

On February 5, 2010, Michael J. McKeefery, Esq., a lawyer with Cohn, responded to plaintiff's letter of May 6, 2009.  Compl. Exh. C, ECF 2-3 (Letter of February 5, 2010). McKeefery advised Willis that the "client" had verified the debt, and that he was enclosing a copy of the Note, Deed of Trust, and a payment history for the loan through April 28, 2009.  *Id.* McKeefery also advised that the Federal National Mortgage Association ("Fannie Mae") "is the current owner of the note."  *Id*.  Further, McKeefery told Willis that Cohn's office was "in physical possession of the original Note on behalf of BAC Home Loans Servicing, L.P., f/k/a Countrywide Home Loans Servicing, Servicers and Attorney-In-Fact for Fannie Mae . . . ."  *Id*. According to McKeefery, information regarding ownership of the Note had been conveyed in a loss mitigation letter to plaintiff dated April 28, 2009.  *Id*.

---

[7] The letter of April 28, 2009, is not included as an exhibit, but it is referenced in plaintiff's letter of May 6, 2009.

On or about February 22, 2010, BAC Home Loans Servicing, as "holder, or authorized agent of the holder of the note", appointed Edward S. Cohn, Stephen N. Goldberg, Richard E. Solomon, and Richard J. Rogers as Substitute Trustees under the Deed of Trust.  *See* Compl. Ex. K, ECF 2-11 (Appointment of Substitute Trustees).  Edward Cohn, as counsel for the Substitute Trustees, initiated foreclosure proceedings against plaintiff and Lewis on February 25, 2010 by filing in the Circuit Court for Baltimore City, an "Order to Docket Foreclosure of Residential Property."  *See* Compl. ¶¶ 11, 16; Compl. Exh. E-M, ECF 2-4 – ECF 2-13 (Foreclosure documents); Docket, Circuit Court for Baltimore City, *Edward S. Cohn v. Winfield T. Willis, et al*, Civil Case No. 24O10000850, *available at* http://casesearch.courts.state.md.us /inquiry/inquiry-index.jsp. The Substitute Trustees subsequently filed a motion to dismiss the foreclosure action, without prejudice, which the Circuit Court granted on July 22, 2010. *See* Docket, Civil Case No. 24O10000850;[8] Compl. ¶ 14.

Plaintiff alleges that Cohn,[9] as agent for defendants, pursued the foreclosure action "with false, fabricated and counterfeit affidavits which is now commonly known as 'robo signing.'" Compl. ¶ 14.  According to plaintiff, defendants "fabricated the loan documents with the date of January 2, 2006 . . . ." *Id*. ¶ 27.  Claiming that he executed all of the loan documents on December 16, 2005, plaintiff asserts that defendants "fabricated loan documents by altering documents signed by the Plaintiff on December 16, 2005 to a date of January 2, 2006 which

---

[8] Court filings are public records of which a federal court may take judicial notice. *See Witthohn v. Fed. Ins. Co.,* 164 F. App'x 395, 397 (4th Cir. 2006); *see also, e.g, Haley v. Corcoran*, 659 F.Supp.2d 714, 721 n.4 (D. Md. 2009) (considering fact that plaintiffs had filed exceptions to foreclosure sale in state proceeding). Accordingly, the Court takes judicial notice of the docket of the state proceeding.

[9] As indicated, "Cohn" refers to the law firm, not to Edward Cohn individually, unless otherwise noted.

render the loan documents unenforceable." *Id.* ¶ 28.   Moreover, plaintiff contends that Cohn "fabricated" the documents filed in support of the foreclosure proceeding by requiring the firm's employees to sign "documents for other parties named on the documents," and by requiring the notary to certify documents "known by the notary to be false."   *See id.* ¶¶ 20, 21. Plaintiff maintains that there was no way for him to know about the "robo-signing" until Cohn dismissed the foreclosure action "when the 'robo-signing' scandal surfaced in 2011 which cited BOA as a primary violator." *Id.* ¶ 22.

In addition, plaintiff contends that Cohn did not include "any chain of assignments or other evidence in the foreclosure complaint" to verify "who actually owns the Note and has standing to foreclose under the Note," and that "Cohn never answered this question in response to the Plaintiff's May 6, 2009 letter (Compl. Exh. B) to Cohn . . . ." Compl. ¶ 26.  Plaintiff notes that the Appointment of Substitute Trustees (Compl. Exh. K) stated that BAC Home Loans Servicing was "the holder, or authorized agent of the holder of the note secured by the Deed of Trust."  Compl. ¶ 25; Compl. Exh. K.  The Affidavit Certifying Ownership of Debt Instrument (Compl. Exh. I) identified Fannie Mae as the owner of the debt instrument secured by the Deed of Trust.  Compl. ¶ 25; Compl. Exh. I.  Plaintiff asserts that Bondcorp was the lender and MERS was the nominee for the lender.  Compl. ¶ 25.  Yet, plaintiff avers, Bondcorp is not a member of MERS.  *Id.* (citing Compl. Exh. O).

Further, plaintiff alleges: "Defendant [sic] routinely and regularly breaches its duty by failing to perform loan servicing functions consistent with its responsibilities to Plaintiff." Compl. ¶ 29.  Willis insists that he was told that "Defendant could not reduce principal on any alleged loan even if Plaintiff's property was worth less than the alleged loan" and that

"Defendant could not forgive any back payments." *Id.* ¶¶ 30, 32.  Plaintiff points to a letter of March 30, 2013, which he wrote to defendants because phone representatives "den[ied] the existence of any principal reduction programs or other programs." *Id.* ¶ 31 (citing Compl. Exh. T, ECF 2-20).

Plaintiff also notes that defendants entered into a consent judgment with the Department of Justice in 2012 "as settlement for the 'robo-signing' and other violations of loan servicing and foreclosure practices, which include $20 billion toward various forms of financial relief to homeowners . . . ."[10]  *Id.*  According to plaintiff, numerous cases have been filed against defendants stemming from defendants "ignoring homeowners' request [sic] to make reasonable adjustments or other alternative solutions that would prevent homes from being foreclosed under government programs . . . ." *Id.* ¶ 33.  To that end, plaintiff asserts that defendants "give homeowners and the Plaintiff wrong information to delay and prevent the homeowners and the Plaintiff from obtaining any modification and/or the best available modification." *Id.* ¶ 34.

Based on these allegations, plaintiff has lodged twenty-two counts against defendants, some of which are based on multiple statutes.  They are as follows: Count I: "(Deceptive Trade Practices) Kick Backs & Yield Spread Premium"; Count II: "(Breach of Fiduciary Duty) Kick Backs & Yield Spread Premium"; Count III: "(Unjust Enrichment) Kick Backs & Yield Spread Premium"; Count IV: "(Violation of Section 6 of RESPA – 12 U.S.C. 2605)"; Count V:

---

[10] Plaintiff attached to his Complaint a Department of Justice press release from March 12, 2012, announcing that the Justice Department, the Department of Housing and Urban Development, and 49 state attorneys general filed in the U.S. District Court for the District of Columbia proposed consent judgments with the nation's five largest mortgage servicers to address mortgage loan servicing and foreclosure abuses.  Compl. Exh. U, ECF 2-21 (*$25 Billion Mortgage Servicing Agreement Filed in Federal Court*, DEPARTMENT OF JUSTICE, Mar. 12, 2012).

"(Violation of the Fair Debt Collection Practices Act) Robo-Signing"; Count VI: "(Wrongful Foreclosure Filing) Robo-Signing"; Count VII: "(Violation of the Maryland Consumer Protection Act) Robo-Signing"; Count VIII: "(Breach of Contract) (Implied Covenant of Good Faith and Fair Dealing) Robo-Signing"; Count IX: "(Unjust Enrichment) Robo-Signing"; Count X: "(Injunctive/Declaratory Relief) Robo-Signing"; Count XI: "(Common Law Fraud)  Robo-Signing"; Count XII: "(Deceptive Trade Practice) Standing"; Count XIII: "(Common Law Fraud) Forged Loan Documents"; Count XIV: "(Violation of the Fair Debt Collection Practices Act) Forged Loan Documents"; Count XV "(Wrongful Foreclosure Filing) Forged Loan Documents"; Count XVI: "(Violation of the Maryland Consumer Protection Act) Forged Loan Documents"; Count XVII: "(Breach of Contract) (Implied Covenant of Good Faith and Fair Dealing) Forged Loan Documents"; Count XVIII: "(Unjust Enrichment) Forged Loan Documents"; Count XIX: "(Injunctive/Declaratory Relief) Forged Loan Documents"; Count XX: "(Deceptive Trade Practices) Predatory Servicing"; Count XXI: "(Breach of Fiduciary Duty) Predatory Servicing"; and  Count XXII: "(Unjust Enrichment) Predatory Servicing."  ECF 2.

Additional facts are included in the Discussion.

## Standards of Review

### I.  Rule 12(b)(6) Standard

A defendant may test the adequacy of a complaint by way of a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  *See McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010).  To survive a Rule 12(b)(6) motion, a complaint must satisfy the pleading standard articulated in Fed. R. Civ. P. 8(a)(2), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief."  The purpose of the rule is to

provide the defendant with "fair notice" of the claim and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 & n.3 (2007). That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted); *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013).

To defeat a motion under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Iqbal*, 556 U.S. at 684 ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . .") (citation omitted); *see also Epps v. JP Morgan Chase Bank, N.A.*, 675 F.3d 315, 320 (4th Cir. 2012); *Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 768 (4th Cir. 2011). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

"Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "A court decides whether this standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to relief. *A Society Without A Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011), *cert. denied*, --- U.S. ----, 132 S. Ct. 1960 (2012). Dismissal "is inappropriate unless, accepting as true the well-pled facts in the complaint and viewing them in the light most favorable to the plaintiff, the plaintiff is unable to 'state a claim to relief . . . .'" *Brockington v.*

*Boykins*, 637 F.3d 503, 505-06 (4th Cir. 2011) (citation omitted).  *See Hartmann v. Calif. Dept. of Corr. & Rehab.*, 707 F.3d 1114, 1122 (9th Cir. 2013) ("'Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory.'") (citation omitted); *Commonwealth Prop. Advocates, LLC v. Mortg. Elec. Reg. Sys., Inc.*, 680 F.3d 1194, 1201-02 (10th Cir. 2011) ("When reviewing a 12(b)(6) dismissal, 'we must determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed.' Dismissal is appropriate if the law simply affords no relief.") (citation omitted).

In considering a Rule 12(b)(6) motion, the court "'must accept as true all of the factual allegations contained in the complaint,'" and must "'draw all reasonable inferences [from those facts] in favor of the plaintiff.'"  *E.I. du Pont de Nemours & Co.*, *supra*, 637 F.3d at 440 (citations omitted); *see, e.g.*, *Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir. 2011) (stating that the court must construe the facts "in the light most favorable to the nonmoving party"), *cert. denied*,    --- U.S. ----, 132 S. Ct. 402 (2011).  But, the court need not accept unsupported or conclusory factual allegations devoid of any reference to actual events.  *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979); *see also Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009).  Nor must it accept legal conclusions couched as factual allegations, *Iqbal*, 556 U.S. at 678, or legal conclusions drawn from the facts.  *See Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Monroe v. City of Charlottesville*, 579 F.3d 380, 385-86 (4th Cir. 2009), *cert. denied*, --- U.S. ----, 130 S. Ct. 1740 (2010).  If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has not shown that "'the pleader is entitled to relief.'"  *Iqbal*, 556 U.S. at 679 (citation omitted).

In resolving a motion to dismiss pursuant to Rule 12(b)(6), the court "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999) (internal quotation marks omitted).  But, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint," the court may resolve the applicability of a defense by way of a Rule 12(b)(6) motion.  *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007).  "This principle only applies, however, if all facts necessary to the affirmative defense '*clearly appear*[ ] *on the face of the complaint*,'" or in other documents that are proper subjects of consideration under Rule 12(b)(6).  *Id.* (quoting *Richmond, Fredericksburg & Potomac R.R. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993)) (emphasis in *Goodman*).

Plaintiff appended numerous exhibits to his Complaint.  *See* Compl. Exhs. A-S; ECF 2-1 – ECF 2-19. Ordinarily, in resolving a motion under Rule 12(b)(6), a court "is not to consider matters outside the pleadings . . . ."  *Bosiger v. U.S. Airways, Inc.*, 510 F.3d 442, 450 (4th Cir. 2007); *see Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013).   In considering a challenge to the adequacy of the Complaint, however, the court "may properly consider documents attached to a complaint or motion to dismiss 'so long as they are integral to the complaint and authentic.'"  *Anand v. Ocwen Loan Servicing, LLC*, --- F.3d ----, 2014 WL 2535405, at *2 (4th Cir. June 6, 2014) (quoting *Philips*, 572 F.3d at 180).  And, as noted, the court may also take judicial notice of public records.  *See* notes 6 and 8*, supra*.

Defendants do not object to the exhibits attached to the Complaint.  Because plaintiff has relied upon them in bringing suit, I will consider them in ruling on the Motion.

Finally, because plaintiff is a self-represented litigant, his pleadings are "'liberally construed'" and "'held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (citation omitted). "However, liberal construction does not absolve Plaintiff from pleading a plausible claim." *Bey v. Shapiro Brown & Alt, LLP,* No. PWG-13-1562, --- F. Supp. 2d ----, 2014 WL 661586, at *3 (D. Md. Feb. 20, 2014); *see also Coulibaly v. J.P. Morgan Chase Bank, N.A.,* No. DKC 10-3517, 2011 WL 3476994, at *6 (D. Md. Aug. 8, 2011) ("[E]ven when pro se litigants are involved, the court cannot ignore a clear failure to allege facts that support a viable claim."), *aff'd,* 526 F. App'x 255 (4th Cir. 2013). The Fourth Circuit has stated:

> It is neither unfair nor unreasonable to require a pleader to put his complaint in an intelligible, coherent, and manageable form, and his failure to do so may warrant dismissal. *Corcoran v. Yorty,* 347 F.2d 222, 223 (9th Cir.), *cert. denied,* 382 U.S. 966 (1965); *Holsey v. Collins,* 90 F.R.D. 122, 128 (D. Md. 1981). District courts are not required to be mind readers, or to conjure questions not squarely presented to them. *Beaudett v. City of Hampton,* 775 F.2d 1274, 1278 (4th Cir. 1985), *cert. denied,* 475 U.S. 1088 (1986).

*Harris v. Angliker,* 955 F.2d 41 1992 WL 21375, at *1 (4th Cir. 1992) (unpublished).

## II.  Rule 9(b) Standard

Several of plaintiff's claims sound in fraud. Such claims implicate the heightened pleading standard of Fed. R. Civ. P. 9(b), which states: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."

Under Rule 9(b), a plaintiff alleging claims that sound in fraud "'must, at a minimum, describe the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" *United States ex rel.*

*Owens v. First Kuwaiti Gen'l Trading & Contracting Co.*, 612 F.3d 724, 731 (4th Cir. 2010)

(citation omitted).  In other words, "'Rule 9(b) requires plaintiffs to plead the who, what, when,

where, and how: the first paragraph of any newspaper story.'"  *Crest Construction II, Inc. v. Doe*,

660 F.3d 346, 353 (8th Cir. 2011) (citation omitted).  The Rule serves several purposes:

> "First, the rule ensures that the defendant has sufficient information to formulate a
> defense by putting it on notice of the conduct complained of . . . .  Second, Rule
> 9(b) exists to protect defendants from frivolous suits.  A third reason for the rule
> is to eliminate fraud actions in which all the facts are learned after discovery.
> Finally, Rule 9(b) protects defendants from harm to their goodwill and
> reputation."

*Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999) (citation

omitted).

By its terms, however, the plain text of Rule 9(b) permits general averment of aspects of

fraud that relate to a defendant's state of mind.  It states, in part: "Malice, intent, knowledge, and

other conditions of a person's mind may be alleged generally." Moreover, Rule 9(b) is "less

strictly applied with respect to claims of fraud by concealment" or omission of material facts, as

opposed to affirmative misrepresentations, because "an omission 'cannot be described in terms

of the time, place, and contents of the misrepresentation or the identity of the person making the

misrepresentation.'"  *Shaw v. Brown & Williamson Tobacco Corp.*, 973 F. Supp. 539, 552 (D.

Md. 1997) (quoting *Flynn v. Everything Yogurt*, 1993 WL 454355, at *9 (D. Md. Sept. 14,

1993)).  Thus, "[i]n cases involving concealment or omissions of material facts, . . . meeting Rule

9(b)'s particularity requirement will likely take a different form."  *Piotrowski v. Wells Fargo

Bank, N.A.*, No. DKC 11-3758, 2013 WL 247549, at *5 (D. Md. Jan. 22, 2013) (citing *Shaw*, 973

F. Supp. at 552).  And, a "court should hesitate to dismiss a complaint under Rule 9(b) if the

court is satisfied (1) that the defendant has been made aware of the particular circumstances for

which she will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts." *Harrison*, 176 F.3d at 784.

## III. Choice of Law

Although this case involves principles of both state and federal law, neither party has addressed the matter of choice of law. The law of the forum state, Maryland, guides the court's choice-of-law analysis. *See Fid. & Guar. Life Ins. Co. v. United Advisory Grp., Inc.*, No. WDQ-13-0040, 2014 WL 346630, at *4 (D. Md. Jan. 29, 2014) ("When sitting in diversity, a federal court follows the choice-of-law rules of the forum state."); *Baker v. Antwerpen Motorcars Ltd.*, 807 F. Supp. 2d 386, 389 n.13 (D. Md. 2011) ("In a federal question [claim] that incorporates a state law issue, . . . a district court applies the choice-of-law rules of the state in which it sits unless a compelling federal interest directs otherwise.").

In a contract claim, Maryland courts follow the rule of *lex loci contractus*, applying the substantive law of the state where the contract was formed, unless there is a choice-of-law provision in the contract. *Am. Motorists Ins. Co. v. ARTRA Group, Inc.,* 338 Md. 560, 573, 659 A.2d 1295, 1301 (1995). In this case, the Deed of Trust provides: "This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located." Compl. Exh. O, ECF 2-15 at 10; Compl. Exh. R, ECF 2-18 at 10. Accordingly, because the Property is located in Maryland, I will apply Maryland law in addressing plaintiff's contract claims.

For tort claims, Maryland applies the principle of *lex loci delicti, i.e.,* the law of the "place of the alleged harm." *Proctor v. Washington Metropolitan Area Transit Auth.,* 412 Md. 691, 726, 990 A.2d 1048, 1068 (2010). Given the Property's location, the alleged harm would

have occurred in Maryland.   Accordingly, I will look to Maryland law with respect to the analysis of plaintiff's claims sounding in tort.

As to plaintiff's claim for unjust enrichment, it does not appear that the State of Maryland has conclusively resolved the choice of law issue.  *See Sensormatic Sec. Corp. v. Sensormatic Electronics Corp.,* 249 F. Supp. 2d 703, 707 (D. Md. 2003).  However, under the Restatement (First) of Conflict of Laws § 453, the Restatement (Second) of Conflict of Laws § 221, and the doctrines of *lex loci delicti* and *lex loci contractus*, I will apply Maryland law, as defendants were allegedly unjustly enriched in Maryland as a result of transactions related to real property located in Maryland. *See also RaceRedi Motorsports, LLC v. Dart Mach., Ltd.*, 640 F. Supp. 2d 660, 666 (D. Md. 2009) (applying the rule of *lex loci contractus* to determine choice-of-law for an unjust enrichment claim); *Harte-Hanks Direct Mktg./Baltimore, Inc. v. Varilease Tech. Fin. Grp., Inc.*, 299 F. Supp. 2d 505, 521 n.16 (D. Md. 2004) (same).

In sum, except with respect to the issues of federal law that control plaintiff's RESPA, TILA, and FDCPA claims, I will resolve the parties' disputes by applying Maryland law.

## Discussion

## I.  Motion to dismiss

### A.  Time-barred claims

As noted, there appear to be two sets of certain loan documents: the Note and the Deed of Trust dated December 16, 2005, and the Note and the Deed of Trust dated January 2, 2006. Plaintiff posits that the documents dated January 2, 2006, are "fabricated."  Defendants present several responses to plaintiff's allegations, although they have not explained the discrepancies in the dates.

Noting that "Plaintiff alleges facts related to the origination of the loan in support of many of the causes of action alleged in the Complaint," ECF 10-1 at 8, defendants observe that "BANA was not involved in the origination of the loan," and therefore "BANA cannot be liable for any claims premised upon the origination of the loan at issue, and must be dismissed." *Id*. Further, defendants contend that the applicable three-year limitations period began to run in January 2006 on plaintiff's MCPA claims (Counts I, VII, XII, XVI, and XX), breach of fiduciary duty claims (Counts II and XXI), and fraud claims (Counts XI and XIII). *Id*. at 8-9. Thus, they argue that, even if BANA were involved in the origination of the loan, "Plaintiff's origination claims are time-barred by the applicable statute of limitations." *Id*. at 8.

The bar of limitations is an affirmative defense. However, "[w]hen it appears on the face of the complaint that the limitation period has run, a defendant may properly assert a limitations defense through a Rule 12(b)(6) motion to dismiss." *See Miller v. Pac. Shore Funding*, 224 F. Supp. 2d 977, 985 (D. Md. 2002), *aff'd*, 92 F. App'x 933 (4th Cir. 2004); *see Dean v. Pilgrim's Pride Corp.*, 395 F.3d 471, 474 (4th Cir. 2005) ("The raising of the statute of limitations as a bar to plaintiffs' cause of action constitutes an affirmative defense and may be raised by motion pursuant to Fed. R. Civ. P. 12(b)(6), if the time bar is apparent on the face of the complaint.").

Under Maryland law, "[a] civil action shall be filed within three years from the date it accrues unless another provision of the Code provides" otherwise. Md. Code (2013 Repl. Vol., 2013 Supp.), § 5–101 of the Courts and Judicial Proceedings Article ("C.J."); *see also Greene Tree Home Owners Ass'n v. Greene Tree Assocs.*, 358 Md. 453, 480, 749 A.2d 806 (2000) (holding that the three-year statute of limitation applies to claims based on the MCPA). "'[T]he question of accrual in § 5–101 is left to judicial determination, unless the determination rests on

the resolution of disputed facts regarding discovery of the wrong." *Poole v. Coakley & Williams Const., Inc.*, 423 Md. 91, 131, 31 A.3d 212, 236 (2011) (internal quotation marks omitted); *see Bank of New York v. Sheff*, 382 Md. 235, 244. 854 A.2d 1269, 1275 (2004) (stating that summary judgment may be appropriate if there is no dispute of material fact as to whether plaintiff was on inquiry notice more than three years before suit was file); *Frederick Road Limited Partnership v. Brown & Sturm*, 360 Md. 76, 95, 756 A.2d 963, 973 (2000) (explaining that the determination of accrual "may be based solely on law, solely on fact, or on a combination of law and fact, and is reached after careful consideration of the purpose of the statute and the facts to which it is applied").

An action typically accrues at the time of the wrong, unless a judicial or legislative exception provides otherwise. *Poole*, 423 Md. at 131, 31 A.3d at 236. But, "[r]ecognizing the unfairness inherent in charging a plaintiff with slumbering on his rights where it was not reasonably possible to have obtained notice of the nature and cause of an injury," Maryland has adopted the so-called discovery rule to determine the date of accrual. *See Sheff*, 382 Md. at 244, 854 A.2d at 1275; *Frederick Road Limited Partnership*, 360 Md. at 95, 756 A.2d at 973; *see also* C.J. § 5-203. "The discovery rule acts to balance principles of fairness and judicial economy in those situations in which a diligent plaintiff may be unaware of an injury or harm during the statutory period." *Dual Inc. v. Lockheed Martin Corp.*, 383 Md. 151, 167, 857 A.2d 1095, 1104 (2004).

Under the discovery rule, "a plaintiff's cause of action accrues when the plaintiff knows or reasonably should have known of the wrong." *Brown v. Neuberger, Quinn, Gielen, Rubin & Gibber, P.A.*, 731 F. Supp. 2d 443, 449 (D. Md. 2010) (citing *Lumsden v. Design Tech Builders,*

*Inc.,* 358 Md. 435, 749 A.2d 796, 801 (2000)), *aff'd*, 495 F. App'x 350 (4th Cir. 2012).

Nevertheless, "[t]his standard . . . does not require actual knowledge on the part of the plaintiff,

but may be satisfied if the plaintiff is on 'inquiry notice.'" *Id.* at 167-68, 857 A.2d at 1104

(citing *Am. Gen. Assurance Co. v. Pappano,* 374 Md. 339, 351, 822 A.2d 1212, 1219 (2003);

*Doe v. Archdiocese of Washington,* 114 Md. App. 169, 188-89, 689 A.2d 634, 644 (1997)).  A

plaintiff is on inquiry notice when the plaintiff "possesses 'facts sufficient to cause a reasonable

person to investigate further, and . . . [that] a diligent investigation would have revealed that the

plaintiffs were victims of . . . the alleged tort.'" *Dual Inc.*, 383 Md. at 168, 857 A.2d 1095

(quoting *Pennwalt Corp. v. Nasios*, 314 Md. 433, 448-49, 550 A.2d 1155, 1159 (1988))

(alterations in original).  Notice may be actual or constructive.  *Poffenberger v. Risser*, 290 Md.

631, 636-38, 431 A.2d 677, 680-81 (1981); *see also United States v. Kubrick*, 444 U.S. 111

(1979) (concluding, under the Federal Tort Claims Act, that plaintiff's negligence claim accrued

when plaintiff knew of both the existence of the harm and its cause).

C.J. § 5-203 states:

> If the knowledge of a cause of action is kept from a party by the fraud of an
> adverse party, the cause of action shall be deemed to accrue at the time when the
> party discovered, or by the exercise of ordinary diligence should have discovered
> the fraud.

Thus, fraudulent conduct may affect the accrual of a cause of action.  "'The fraud

exception is essentially a tangent of the discovery rule.'" *Larocca v. Creig Northrop Team, P.C.*,

____ Md. App. _____, No. 0766, Sept. Term 2013, 2014 WL 2883470, at *7 (June 25, 2014)

(quoting *Supik v. Bodie, Nagle, Dolina, Smith & Hobbs, P.A*, 152 Md. App. 698, 715, 834 A.2d

170, 179 (2003)).

"Section 5-203 does not require that the defendant commit a fraud distinct from that initially committed for the purpose of keeping the plaintiff in ignorance of his or her cause of action." *Frederick Road Limited Partnership*, 360 Md. at 98, 756 A.2d at 975. Rather, C.J. § 5-203 applies where two conditions are met: "(1) the plaintiff has been kept in ignorance of the cause of action by the fraud of the adverse party, and (2) the plaintiff has exercised usual or ordinary diligence for the discovery and protection of his or her rights." *Id.* at 98-99, 756 A.2d at 975.

Plaintiff argues that limitations should be tolled "to begin after 2010 when the foreclosure process began . . . ." ECF 18 at 2. According to plaintiff, this "was the time that these illegal items were uncovered due to the mortgage crisis during this period." *Id.* He asserts: "In normal times, no reasonable person would question any mortgage transaction, but the media prompted average consumers to research due to the severe mortgage crisis." *Id.*

Counts XX and XXI allege violations of the MCPA and breach of fiduciary duty, respectively, and are not premised upon the origination of the loan. Rather, the Complaint reflects that these counts relate to events that took place with regard to plaintiff's attempts to modify his loan. It is not clear when the events underlying these counts occurred. However, in support of Count XX, plaintiff refers to a letter of March 30, 2013, which he wrote to defendants because phone representatives "den[ied] the existence of any principal reduction programs or other programs." *Id.* ¶ 31; 155. Further, plaintiff vaguely alleges that defendants denied the availability of loan modification programs "in several conversations before and after the 'robo-signing' s[c]andal." *Id.* ¶ 30. Accordingly, I cannot conclude, based on the face of the Complaint, that these claims are barred by limitations.

Plaintiff's MCPA claim in Count I and his breach of fiduciary duty claim in Count II both stem from allegations that the defendants engaged in wrongful conduct at the time they entered into the loan agreement in December 2005 or January 2006, by concealing a yield spread premium.[11]  The MCPA claims in Counts VII, XII, and XVI and the fraud claims in Counts XI and XIII are premised on allegations of the filing of robo-signed affidavits and forged loan documents in connection with the foreclosure action filed in February 2010.

As to the common law fraud claim in Count XIII, it is apparent that limitations has run. A review of the documents filed in the foreclosure action make clear that, by April 2010, at the latest, plaintiff had notice that the Deed of Trust and the Note were dated January 6, 2006. Yet, he did not file his Complaint until July 30, 2013. *See* ECF 2 at 25.

The foreclosure action was filed in the Circuit Court for Baltimore City on February 25, 2010.  On February 22, 2010, plaintiff was sent notice of the filing of foreclosure action, in compliance with R.P. § 7-105.9(e) and Md. Rule 14-209(c).  *See* Compl. Exh. M, ECF 2-13 ("Affidavit Pursuant to Md. Ann. Code RP § 7-105.9 (e) and Md. Rule 14-209 (e)(1), of Notice to all Occupants Pursuant to § 7-105.9 (b) and Md. Rule 14-209 (c)"). The docket of the foreclosure proceeding includes an Affidavit of Service, averring that the Order to Docket was posted on the Property; it was filed with the Circuit Court on March 26, 2010.  *See* Docket, *supra*, Civil Case No. 24O10000850. And, of import here, Willis filed a motion to stay and dismiss the foreclosure proceeding on April 1, 2010.  *Id.*  That filing unequivocally establishes that plaintiff was on notice or, at a minimum, on inquiry notice of the alleged wrong by April

---

[11] Although defendants assert that the MCPA claim contained in Count I is time-barred, defendants do not raise a limitations defense as to the RESPA or TILA claims contained in Count I.  Nor do defendants assert that plaintiff's FDCPA claim is time-barred.

2010, more than three years prior to the filing of the instant action. *See Lumsden v. Design Tech Builders, Inc.*, 358 Md. 435, 445, 749 A.2d 796, 801 (2000) ("A claimant reasonably should know of a wrong if the claimant has knowledge of circumstances which ought to have put a person of ordinary prudence on inquiry [thus, charging the individual] with notice of all facts which such an investigation would in all probability have disclosed if it had been properly pursued.") (alteration in original) (internal quotation marks omitted).

Notably, knowledge of facts, not knowledge of their legal significance, determines when the statute of limitations begins to run.  In *King v. Ameriquest Mortgage Co.*, No. PJM 09-977, 2009 WL 3681688, at *2 (D. Md. Oct. 30, 2009), the Court said: "As for [plaintiff's] argument that he did not discover the legal basis for his claims until 'news reports of predatory lending surfaced in 2008,' the discovery rule applies to the discovery of facts, not to the discovery of the legal basis for a claim."  *Miller v. Pacific Shore Funding,* 224 F. Supp. 2d 977, 986-87 (D. Md. 2002) ("The discovery rule . . . applies to discovery of *facts,* not to discovery of *law.* Knowledge of the law is presumed. Ignorance of the rights it grants and protects does not toll the statute of limitations."  (emphasis in original) (internal citations omitted)), *aff'd*, 92 F. App'x 933 (4th Cir. 2004); *see also Porter v. GreenPoint Mortgage Funding, Inc.*, No. DKC-11-1251, 2011 WL 6837703, at *6 (D. Md. Dec. 28, 2011) (declining to apply equitable tolling because plaintiffs "were aware of numerous facts . . . which should have raised their suspicions and caused them to investigate the terms of the refinanced mortgage loan"); *Brown*, 731 F. Supp. 2d at 453 (finding equitable tolling inapplicable in light of plaintiffs' "failure to exercise diligence in the face of facts that raised suspicion"); *Douglass v. NTI-TSS, Inc.*, 632 F. Supp. 2d 486, 492 (D. Md. 2009)

(declining to toll the limitations period where plaintiff "failed to allege that she exercised ordinary diligence in discovering the alleged fraud").

Plaintiff asserts in his Opposition, without legal support, that "mortgage transactions have a statute of limitations between 6 and 12 years."[12]  Presumably, he seeks to argue that he has six to twelve years to raise a claim based on a mortgage.  He cites no authority for that proposition.

C.J. § 5–102(a) provides for a twelve-year statute of limitations in regard to actions "on" specialties, including promissory notes and contracts under seal.  In determining whether § 5–102's twelve-year limitations period is available to plaintiff, a two-step inquiry is required: (1) Is the contract a specialty? (2) Is the cause of action "on" the specialty?  *Wellington Co., Inc. Profit Shar. Plan and Trust v. Shakiba*, 180 Md. App. 576, 952 A.2d 328, 343 (2008).  "'Whether a particular action is on a sealed instrument must depend on the character of the action; in order to be within the statute relating to sealed instruments, the action must be brought on the instrument itself . . . .'"  *Id.* (quoting 54 C.J.S. *Limitations of Actions* § 54, at 90 (1987)).

Plaintiff has not asserted his fraud claim *on* the Deed of Trust or Note in question; this is not an action on the Note to recover the debt, within the meaning of C.J. § 5-102.  *See Master Fin., Inc. v. Crowder*, 409 Md. 51, 64, 972 A.2d 864, 872 (2009) (finding that the actions were not on the notes or deeds of trust where plaintiffs did "not seek[] to enforce those instruments, or to invalidate or reform them based on any alleged imperfection in the instruments themselves,"

---

[12] In his Opposition, plaintiff also states that the statute of limitations for "FIRREA civil fraud . . . is 10 years." Opp. ¶ 8, ECF 18 at 2.  However, in his Complaint, plaintiff does not assert a claim for "FIRREA civil fraud."  To the extent plaintiff seeks to raise such a claim, he may not do so through his opposition.  *See Mylan Laboratories, Inc. v. Akzo, N.V.*, 770 F. Supp. 1053, 1068 (D. Md. 1991) ("'[I]t is axiomatic that the complaint may not be amended by [a] brief[ ] in opposition'" (quoting *Car Carriers, Inc. v. Ford Motor Co.,* 745 F.2d 1101, 1107 (7th Cir. 1984)).

and alleged facts forming the basis of the complaint and the consequences of them were "entirely extraneous to the notes and deeds of trust"); *Onwumbiko v. JP Morgan Chase Bank, N.A.*, No. 8:12-CV-01733-AW, 2012 WL 6019497, at *3 (D. Md. Nov. 30, 2012) ("Plaintiff has not asserted his action on the deed of trust in question.   Rather, Plaintiff's fraud, consumer protection, and fair lending claims are almost entirely based on allegations of false advertising and conspiratorial conduct that is extraneous to the deed of trust."), *aff'd,* 532 F. App'x 404 (4th Cir. 2013).   Because C.J. § 5-102 is inapplicable to plaintiff's fraud claim, I will dismiss Count XIII, with prejudice.

It would be premature to conclude that, prior to July 2010, plaintiff was on inquiry notice of the facts giving rise to the breach of fiduciary duty claim in Count II; the MCPA claims in Counts VII, XII, and XVI; and the fraud claim in Count XI, especially in light of plaintiff's allegations that certain facts underlying these claims were concealed from him.   *See generally Miller*, 224 F. Supp. 2d 977 at 987 ("[W]hen a defendant's 'stealth [or] subterfuge ... leave[s] a plaintiff "blamelessly ignorant" of the facts and circumstances legally entitling him or her to relief,' the discovery rule prevents the limitations clock from running until the plaintiff has learned or should have learned of the fraud") (quoting *Murphy v. Merzbacher,* 346 Md. 525, 532, 697 A.2d 861, 864-65 (1997)) (alterations in original).   Accordingly, I will not dismiss those counts based on limitations.   Nevertheless, as discussed, *infra*, plaintiff's claims fail for other reasons.

### B.  TILA and RESPA (Count I)

In Count I, plaintiff alleges that defendant violated TILA and RESPA by paying a "yield spread premium" to the loan broker.   Plaintiff asserts: "Defendants utilized a 'Table Funded'

loan arrangement with Bondcorp Realty Services, Inc., the loan broker, in which the Defendant was the actual lender in Plaintiff's alleged loan." Compl. ¶ 40. By plaintiff's account, defendants paid Bondcorp "interest for a loan for two months and other unbundled underwriting fees." *Id.* at ¶ 46. Plaintiff asserts that "any sort of payment" to Bondcorp, as the broker or originator of the loan, "that does not represent reasonable compensation for services is prohibited." *Id.* at ¶ 42. In the context of Count I, defendants do not address the alleged violations of RESPA and TILA.

1. <u>RESPA</u>

Congress enacted RESPA to "insure that consumers . . . are provided with greater and more timely information on the nature and costs of the settlement process and are protected from unnecessarily high settlement charges caused by certain abusive practices . . . ." 12 U.S.C. § 2601. Until recently, the Department of Housing and Urban Development ("HUD") was the agency charged with interpreting and enforcing RESPA.[13]

In Count I, plaintiff asserts that defendants violated § 2607 of RESPA. *See* Compl. ¶ 44. Section 2607 of Title 12 of the United States Code includes two separate prohibitions. Section 2607(a), titled "Business referrals," states: "No person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or a part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person." Section 2607(b), titled "Splitting charges,"

---

[13] HUD's consumer-protection functions under the RESPA were transferred to the Consumer Financial Protection Bureau on July 21, 2011. *See* Dodd–Frank Wall Street Reform and Consumer Protection Act, §§ 1061(b)(7) and (d), 1062, 1098, 1100H, 124 Stat. 2038, 2039–2040, 2103–2104, 2113.

prohibits any person from giving or accepting "any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed." Section 2607(c), often referred to as the "carve out," sets forth several categories that are excluded from the prohibition against kickbacks and referral fees, including "the payment to any person of a bona fide salary or compensation or other payment . . . for services actually performed . . . ."

Yield spread premiums are not per se legal or illegal. *See, e.g.*, *Bjustrom v. Trust One Mortg. Corp.*, 322 F.3d 1201, 1206 (9th Cir. 2003). As the Sixth Circuit explained:

> This industry term describes all expenses that a lender pays to a broker in order to lower the borrower's up-front closing costs and facilitate loan creation. The borrower then repays the lender through a higher interest rate over the life of the loan. The amount of the Yield Spread Premium in each case is determined by looking at the difference between the preset "par rate" and the interest rate on the eventual loan. The par rate represents the interest rate at which the lender would fund 100% of the loan with no premiums. Lenders calculate and communicate the par rate daily to brokers. For a broker to earn any Yield Spread Premium, the borrower's eventual loan must be "above par." The higher the interest rate on the eventual loan, the higher the premium the broker earns, and the easier it will be for the lender to resell the mortgage to investors in the securities marketplace.

*Lee v. Countrywide Home Loans, Inc.*, 692 F.3d 442, 445 (6th Cir. 2012) (citing *Glover v. Standard Fed. Bank,* 283 F.3d 953, 957–58 (8th Cir. 2002)); *see also, e.g.*, *Howland v. First Am. Title Ins. Co.*, 672 F.3d 525, 530 (7th Cir. 2012); *Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1320-21 (11th Cir. 2008).

In 2001, HUD issued a policy statement that articulated a two-step test for determining whether a yield spread premium violates RESPA. *See* Statement of Policy 2001–1, 66 Fed. Reg. 53052, 53054 (Oct. 18, 2001). The test asks: 1) whether goods or facilities were provided or

services were performed for the compensation paid, and 2) whether the total compensation to the broker is "reasonably related to the total set of goods or facilities actually furnished or services performed." 66 Fed. Reg. at 53055.  The policy statement emphasized that a yield spread premium can be a "useful means to pay some or all of a borrower's settlement costs" as well as "a legitimate tool to assist the borrower." 66 Fed. Reg. 53052, 53054.

As the foregoing makes clear, payment of a yield spread premium alone is insufficient to establish a claim under 12 U.S.C. § 2607. As the court stated in *Bassett v. Ruggles*, No. CV-F-09-528 OWW/SMS, 2009 WL 2982895, at *14 (E.D. Cal. Sept. 14, 2009): "The fact of a premium is not *ipso facto* a violation of RESPA. It is only a violation if Plaintiffs satisfy the two-part test, *i.e.*, whether goods or facilities were actually furnished or services were actually performed for the compensation paid and whether the payments were reasonably related to the value of the goods or facilities that were actually furnished or services that were actually performed."

In this case, plaintiff has failed to set forth facts that demonstrate the yield spread premium was illegal, or that otherwise render plausible his allegations that defendants violated 12 U.S.C. § 2607. Plaintiff baldly asserts that any payment to Bondcorp that does not represent reasonable compensation for services is prohibited. Compl. ¶ 42. Yet, plaintiff fails to allege what services, if any, Bondcorp performed, nor has plaintiff offered case-specific allegations as to whether the compensation for those services was reasonable or unreasonable.  *See Dodd v. Fed. Home Loan Mortgage Corp.*, No. CIV S-11-1603 JAM, 2011 WL 6370032 (E.D. Cal. Dec. 19, 2011) (The single allegation quoted above is insufficient to state a RESPA claim that the yield spread fees charged to plaintiff were unreasonable since plaintiff fails to allege what

services were performed by Freddie Mac, when they were performed, and what fees, if any, were charged by Freddie Mac for those services."); *Fong v. Wells Fargo Bank, N.A*, No. 2:12-CV-386 JD, 2013 WL 4760956, at *6 (N.D. Ind. Sept. 3, 2013) (dismissing plaintiff's RESPA claim premised on the payment of a yield spread premium where plaintiff did "not allege what the alleged goods or services were, who claimed to be performing them, and what the actual value (or the allegedly non-related payment value) of those goods or services was").

In sum, the Complaint fails to state a claim that payment of a yield spread premium to Bondcorp was in violation RESPA. Accordingly, plaintiff's RESPA claim in Count I will be dismissed, without prejudice.

2. <u>TILA</u>

TILA was enacted to "'assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit.'" *Mourning v. Family Publications Serv., Inc.*, 411 U.S. 356, 364–65 (1973) (quoting 15 U.S.C. § 1601(a)). The statute "requires creditors to provide borrowers with clear and accurate disclosures of terms," *Beach v. Ocwen Federal Bank,* 523 U.S. 410, 412 (1998), and imposes civil liability on creditors who fail to do so. *Koons Buick Pontiac GMC, Inc. v. Nigh*, 543 U.S. 50, 54 (2004); 15 U.S.C. § 1640(a).

The Federal Reserve Board, the agency charged with administering the statute, promulgated Regulation Z to implement TILA's mandates and methods of disclosure. 15 U.S.C. § 1604; 12 C.F.R. §§ 226.1 *et seq.* (2008); *see Tripp v. Charlie Falk's Auto Wholesale Inc.*, 290 F. App'x 622, 626 (4th Cir. 2008). Among other required material disclosures, TILA and Regulation Z require lenders to disclose the finance charge, the amount financed, and the annual

percentage rate. *See* 15 U.S.C. § 1638(a); 12 C.F.R. § 226.18. The "finance charge" refers to the "sum of all charges, payable directly or indirectly by the person to whom the credit is extended, and imposed directly or indirectly by the creditor as an incident to the extension of credit." 15 U.S.C. § 1605(a); *see* 12 C.F.R. § 226.4(a).

"Under TILA, borrower-paid mortgage broker fees qualify as finance charges, whether those fees are paid directly to the broker, or paid directly to the lender for delivery to the broker." *Hernandez v. Downey Sav. & Loan Ass'n*, No. 08CV2336-IEG LSP, 2009 WL 704381, at *8 (S.D. Cal. Mar. 17, 2009) (citing 12 C.F.R. § 226.4(a)(3); 15 U.S.C. § 1605(a)(6)); *see Stump v. WMC Mortgage Corp.*, No. 02-326, 2005 WL 645238 (E.D. Pa. Mar. 16, 2005) ("The yield spread premium . . . qualifies as a 'finance charge' under the TILA definition, which expressly includes mortgage broker fees paid to the lender for delivery to the broker" (citing 12 C.F.R. § 226.4(a)(3); 15 U.S.C. § 1605(a)(6))). However, TILA does not require a lender to break down the components of the finance charge to disclose the separate existence of a yield spread premium. *Hernandez*, 2009 WL 704381, at *8 (explaining that "the Federal Reserve Board has clarified that fees paid 'to a broker as a "yield spread premium" that are already included in the finance charge, either as interest or as points, should not be double counted' on the TILA Disclosure Statement" (citing 61 F.R. 26126, 26127 (1996); 61 F.R. 49237, 49238–49239 (1996))); *see also In re Meyer,* 379 B.R. 529, 544 (Bankr. E.D. Pa. 2007); *Noel v. Fleet Fin., Inc.,* 34 F. Supp. 2d 451, 457 (E.D. Mich. 1998).

Plaintiff has failed to allege a cause of action under TILA.  He asserts that defendants violated TILA by paying yield spread premiums to the broker. However, "TILA is only a 'disclosure statute' and 'does not substantively regulate consumer credit but rather requires

disclosure of certain terms and conditions of credit before consummation of a consumer credit transaction.'" *Hauk v. J.P. Morgan Chase Bank USA,* 552 F.3d 1114, 1120 (9th Cir. 2009) (quoting *Rendler v. Corus Bank,* 272 F.3d 992, 996 (7th Cir. 2001)) (internal quotations omitted); *cf. Coulibaly*, *supra*, 2011 WL 3476994, at *10 ("TILA does not prevent a lender from charging a higher rate of interest; it simply requires lenders to disclose accurately the actual rate of interest charged."). Thus, TILA proscribes the disclosure of certain charges, not the propriety of the charges themselves.

To the extent that plaintiff alleges that defendants violated TILA by withholding or inaccurately disclosing the finance charge, plaintiff fails to set forth allegations to support such a claim. Indeed, as currently pled, plaintiff's allegations fail to put defendants on fair notice of how TILA's disclosure requirements were allegedly violated. Accordingly, the claim is subject to dismissal, without prejudice.

### C. Common law fraud (Count XI)

In Count XI, plaintiff lodges a claim for fraud, which is grounded on allegations that defendants filed robo-signed foreclosure documents. Plaintiff alleges, in pertinent part: "Defendants made material misrepresentation [sic] and concealed facts which were material to the transactions as stated herein. These omissions and misrepresentations were made with the knowledge of their falsity and/or with reckless disregard with the intent of defrauding Plaintiff." Compl. ¶ 104. According to plaintiff, "[t]he facts omitted and undisclosed by Defendants would have been important to a reasonable person, including the Plaintiff who in fact relied upon the misrepresentations." *Id.* at ¶ 105.

Under Maryland common law, "'[f]raud encompasses, among other things, theories of fraudulent misrepresentation, fraudulent concealment, and fraudulent inducement.'"  *Sass v. Andrew*, 152 Md. App. 406, 432, 832 A.2d 247, 261 (2003) (citation omitted).  In an action for fraudulent misrepresentation, the plaintiff ordinarily must show:

> 1) that the defendant made a false representation to the plaintiff;
>
> 2) that its falsity was either known to the defendant or that the representation was made with reckless indifference as to its truth;
>
> 3) that the misrepresentation was made for the purpose of defrauding the plaintiff;
>
> 4) that the plaintiff relied on the misrepresentation and had the right to rely on it; and
>
> 5) that the plaintiff suffered compensable injury resulting from the misrepresentation.

*Nails v. S&R, Inc.*, 334 Md. 398, 415, 639 A.2d 660, 668 (1994); *accord Thomas v. Nadel*, 427 Md. 441, 451 n.18, 48 A.3d 276, 282 n.18 (2012); *Sass*, 152 Md. App. at 429, 832 A.2d at 260.

To be actionable, a false representation "must be of a material fact."  *Gross v. Sussex, Inc.*, 332 Md. 247, 258, 630 A.2d 1156, 1161 (1993).  "A 'material' fact is one on which a reasonable person would rely in making a decision," *Sass*, 152 Md. App. at 430, 832 A.2d at 260, or a fact that "'the maker of the misrepresentation knows . . . [the] recipient is likely to regard . . . as important.'"  *Gross*, 332 Md. at 258, 630 A.2d at 1161 (citation omitted).  Moreover, the fraudulent "misrepresentation must be made with the deliberate intent to deceive."  *Sass*, 152 Md. App. at 430, 832 A.2d at 260 (citing  *VF Corp. v. Wrexham Aviation Corp.*, 350 Md. 693, 704, 715 A.2d 188 (1998)).  So, the defendant must "know[ ] that his representation is false" or be "recklessly indifferent in the sense that he knows that he lacks knowledge as to its truth or falsity."  *Ellerin v. Fairfax Savings, F.S.B.*, 337 Md. 216, 232, 652 A.2d 1117 (1995).

Ordinarily, under Maryland law, a mere failure to disclose a material fact does not constitute fraud, in the absence of a legal duty to disclose that inheres in certain types of transactions. "Maryland recognizes no general duty upon a party to a transaction to disclose facts to the other party." *Maryland Envtl. Trust v. Gaynor*, 370 Md. 89, 97, 803 A.2d 512, 516 (2002). However, "[e]ven in the absence of a duty of disclosure, one who suppresses or conceals facts which materially qualify representations made to another may be guilty of fraud." *Finch v. Hughes Aircraft Co.*, 57 Md. App. 190, 239, 469 A.2d 867, *cert. denied*, 300 Md. 88, 475 A.2d 1200 (1984), *cert. denied*, 469 U.S. 1215 (1985).

Fraud based on active suppression of material facts is the variety of fraud referred to as "fraudulent concealment." The Maryland Court of Appeals has said: "Fraudulent Concealment 'is any statement or other conduct which prevents another from acquiring knowledge of a fact, such as diverting the attention of a prospective buyer from a defect which otherwise, he would have observed.'" *Lloyd v. Gen'l Motors Corp.*, 397 Md. 108, 138, 916 A.2d 257, 274 (2007) (citation omitted). In other words, it describes a "situation where the defendant actively undertakes conduct or utters statements designed to, or that would, divert attention away from" a material fact. *Id.* at 138 n.11, 916 A.2d at 274 n.11.

"'To create a cause of action, concealment must have been intentional and effective—the hiding of a material fact with the attained object of creating or continuing a false impression as to that fact. The affirmative suppression of the truth must have been with intent to deceive.'" *Fegeas v. Sherrill,* 218 Md. 472, 476-77, 147 A.2d 223, 225-26 (1958); *accord Rhee v. Highland Dev. Corp.*, 182 Md. App. 516, 524, 958 A.2d 385, 390 (2008). As the *Rhee* Court explained, 182 Md. App. at 536, 958 A.2d at 396 (internal citation omitted) (alterations in *Rhee*):

[T]he concealment or suppression [of a material fact] is in effect a representation that what is disclosed is the whole truth. The gist of the action [for fraud] is fraudulently producing a false impression upon the mind of the other party; and if this result is accomplished, it is unimportant whether the means of accomplishing it are words or acts of the defendant . . . .

A claim of failure to disclose "requires only that the defendant remain silent about, or omit, facts that the defendant had a duty to disclose." *Lloyd*, 397 Md. at 138 n.11, 916 A.2d at 274 n.11. Where the fraudulent concealment claim is based on a duty to disclose, Maryland courts have formulated the elements of the cause of actions as follows:

"(1) [T]he defendant owed a duty to the plaintiff to disclose a material fact; (2) the defendant failed to disclose that fact; (3) the defendant intended to defraud or deceive the plaintiff; (4) the plaintiff took action in justifiable reliance on the concealment; and (5) the plaintiff suffered damages as a result of the defendant's concealment."

*Blondell v. Littlepage*, 413 Md. 96, 119, 991 A.2d 80, 94 (2010) (quoting *Lloyd*, 397 Md. at 138, 916 A.2d at 274) (emphasis omitted).

The Maryland Court of Appeals encapsulated the foregoing principles in *Frederick Road Limited Partnership*, *supra*, 360 Md. at 100 n.14, 756 A.2d at 976 n.14 (internal citations omitted):

Ordinarily, non-disclosure does not constitute fraud unless there exists a duty of disclosure.  Absent a fiduciary relationship, this Court has held that a plaintiff seeking to establish fraudulent concealment must prove that the defendant took affirmative action to conceal the cause of action and that the plaintiff could not have discovered the cause of action despite the exercise of reasonable diligence, and that, in such cases, the affirmative act on the part of the defendant must be more than mere silence; there must be some act intended to exclude suspicion and prevent injury, or there must be a duty on the part of the defendant to disclose such facts, if known.

Additionally, as discussed, allegations of fraud implicate the heightened pleading standard under Fed. R. Civ. P. 9(b).  To establish a claim for fraud, plaintiff must allege "'the time, place,

- 33 -

and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" *United States ex rel. Owens*, *supra*, 612 F.3d 731 (citation omitted). As indicated, "'Rule 9(b) requires plaintiffs to plead the who, what, when, where, and how: the first paragraph of any newspaper story.'" *Crest Construction II, supra,* 660 F.3d at 353 (citation omitted). Indeed, "[e]ven where a plaintiff is proceeding *pro se,* the particularity requirements of Rule 9(b) apply." *Coulibaly v. J.P. Morgan Chase Bank, N.A.,* No. DKC-10–3517, 2011 WL 3476994, *19 n.23 (D. Md. Aug. 8, 2011), *reconsideration denied,* 2011 WL 6837656 (D. Md. Dec. 28, 2011).

Here, plaintiff has not offered factual allegations to support the elements of a fraud claim. Plaintiff does not allege any facts to show that he justifiably relied on the alleged robo-signing of foreclosure documents.  Nor has he alleged facts to show he suffered a compensable injury proximately caused by defendants' use of documents that were allegedly robo-signed, particularly given that the foreclosure action was dismissed.

*Stewart v. Bierman*, 859 F. Supp. 2d 754 (D. Md. 2012), *aff'd sub nom. Lembach v. Bierman*, 528 F. App'x 297 (4th Cir. 2013), is instructive. There, plaintiffs asserted that defendants violated the FDCPA and MCPA because law firm employees fabricated signatures on the order to docket foreclosure and other documents that contained the alleged signatures of the trustees. In concluding that the signatures contained on the foreclosure documents were not material for the purposes of the FDCPA, Judge Titus stated, 859 F. Supp. 2d at 764:

> While the Court agrees that the Defendants' foreclosure practices were shortcuts that do not comply with the signature and acknowledgement requirements of the Maryland rules, the facts alleged by Plaintiffs do not rise to the level of materiality on which a FDCPA claim can be maintained. Although the trustee signatures are alleged not to be those of the Defendants, they are not actionable because they were not material. *See Warren,* 676 F.3d at 374–75. The Orders to

Docket were correct in every way except that the signatures were affixed with the authority of the purported signer, but not in fact signed by the person whose name was affixed. *See Harvey v. Great Seneca Fin. Corp.,* 453 F.3d 324, 332 (6th Cir. 2006) (rejecting plaintiff's argument that defendant's conduct violated Section 1692e because plaintiff "never denied in her complaint that she owed [defendant] a debt, nor did she claim that [defendants] misstated or misrepresented the amount that she owed"); *Johnson,* 2011 WL 4550142, at *10 ("To the extent Plaintiffs' allegations imply the filing of a lawsuit without substantiating documentation is false, deceptive or misleading, Plaintiffs do not state a claim [because] insufficient evidence or documentation claims based on the filing of a state court complaint do not constitute viable claims under section 1692e.") (quotation omitted).

Judge Titus relied on the same reasoning to dismiss plaintiffs' MCPA claim.  Notably, he said: "The manner or procedure of affixing signatures to documents that are accurate in every other way except for the signature does not affect the accuracy of the underlying debt. . . . The actual process and method of affixing signatures to court documents is immaterial to a debtor where the existence of the debt and a default are not disputed." *Id.* at 679.

In affirming dismissal of the FDCPA claim, the Fourth Circuit reasoned in *Lembach*, 528 F. App'x at 303 (internal citation omitted):

Although we do not look favorably upon improper behavior by attorneys, we ultimately cannot find that the misrepresentations [the substitute trustee] made are material because they have no connection to the debt at issue in this case. The Lembachs were unquestionably in default, and the documents correctly stated the debt. The Lembachs fail to allege how they, or any consumer, would be misled by a signature by someone other than the trustee that is affixed to a document that was substantively correct. We recognize the fact that the trustee's signature was required under the Maryland rules to file a foreclosure action. However, the fact that Maryland has adopted foreclosure regulations that address the particularities of filing a foreclosure action has no bearing on whether a signature is material under federal law. Because the signatures have no connection to the debt, and the Lembachs fail to show how the fraudulent signatures would mislead even the least sophisticated consumer, their claim fails.

Plaintiff does not squarely dispute that the loan was in default at the time the foreclosure action was initiated. *See* Compl. Further, he does not allege that the "robo-signed" documents

- 35 -

contained false information as to the amount due on the loan. *See Bucy v. Aurora Loan Servs., LLC,* 2011 WL 1044045, *6 (S.D. Ohio 2011) (dismissing a claim for fraud based on "robo-signing" where "Plaintiff d[id] not dispute the accuracy of any of the salient facts, such as the amount owed or the amount in default.")). Indeed, nothing in the Complaint suggests that the content of any documents that were allegedly robo-signed was inaccurate, or otherwise caused harm to plaintiff.

To be sure, a lawyer who knowingly files a false document with a court may face serious professional consequences. *See, e.g., Attorney Grievance Comm'n of Maryland v. Geesing*, 436 Md. 56, 80 A.3d 718 (2013) (suspension for filing robo-signed affidavits in foreclosure proceedings); *Attorney Grievance Comm'n of Maryland v. Dore*, 433 Md. 685, 73 A.3d 161 (2013) (same); *see also* Maryland Lawyers' Rules of Professional Conduct 3.3(a)(1) (making or failing to correct a false statement to a tribunal); 8.4(c) (dishonesty, fraud, misrepresentation); 8.4(d) (conduct prejudicial to the administration of justice). But, that is separate and apart from establishing a fraud claim actionable by plaintiff.

Because plaintiff fails to state a claim for fraud, his fraud claim will be dismissed, with prejudice.

### D. Deceptive trade practices (Counts I, VII, XII, XVI, XX)

In Counts I, VII, XII, XVI, XX, plaintiff alleges that defendants violated the MCPA. The MCPA is "intended to provide minimum standards for the protection of consumers in the State." Com. Law § 13–303(a); *see also Lloyd*, *supra*, 397 Md. at 140, 916 A.2d at 276. It is liberally construed in order to achieve its consumer protection objectives. *Marchese v. JPMorgan Chase*

*Bank, N.A.*, 917 F. Supp. 2d 452, 465 (D. Md. 2013) (citing *State v. Cottman Transmissions Sys., Inc.,* 86 Md. App. 714, 587 A.2d 1190, 1204 (1991)).

Among other things, it is unlawful under the MCPA for a person to use unfair or deceptive trade practices related to the extension of consumer credit or the collection of consumer debts.  Com. Law § 13–301; *see Piotrowski v. Wells Fargo Bank, N.A.*, No. DKC-11-3758, 2013 WL 247549, at *10 (D. Md. Jan. 22, 2013).  Com. Law § 13-301(1) defines unfair or deceptive trade practices as, *inter alia*: (1) "False, falsely disparaging, or misleading oral or written statement, visual description, or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers;" and (2) "Failure to state a material fact if the failure deceives or tends to deceive."  *See Marshall v. James B. Nutter & Co.*, 816 F. Supp. 2d 259, 266 (D. Md. 2011) (explaining that "the MCPA prohibits both the use of false or misleading statements and also the omission of material facts").

For both material misrepresentation and material omission claims under the MCPA, a party must prove reliance. *Bezmenova v. Ocwen Fin. Corp.*, No. 8:13-CV-00003-AW, 2013 WL 3863948, at *5 (D. Md. July 23, 2013); *see also Bank of Am., N.A. v. Jill P. Mitchell Living Trust*, 822 F. Supp. 2d 505, 533 (D. Md. 2011) (explaining that "[t]he requirement of reliance flows from the MCPA's prescription that the party's 'injury or loss' be 'the result of' the prohibited practice . . . ."). With respect to a material misrepresentation, "[a] consumer relies on a misrepresentation when the misrepresentation substantially induces the consumer's choice." *Mitchell Living Trust*, 822 F. Supp. 2d at 533 (citations omitted). In contrast, "a consumer relies on a material omission under the MCPA where it is substantially likely that the consumer would

not have made the choice in question had the commercial entity disclosed the omitted information." *Id.* at 535.

An individual bringing a private cause of action pursuant to the MCPA must establish an actual injury or loss sustained as a result of a prohibited practice. *See Marchese*, 917 F. Supp. 2d at 465; *see also Allen v. CitiMortgage, Inc.,* No. CCB–10–2740, 2011 WL 3425665, at *10 (D. Md. Aug. 4, 2011) (explaining that under the MCPA "an individual may only bring a claim if she can 'establish the nature of the actual injury or loss that he or she allegedly sustained as a result of the prohibited practice'" (quoting *Lloyd*, 397 Md. at 148, 916 A.2d at 280)); *Lloyd,* 397 Md. at 143, 916 A.2d at 277 (concluding that a plaintiff must demonstrate that he or she "suffered an identifiable loss, measured by the amount the consumer spent or lost as a result of his or her reliance on the sellers' misrepresentation").

MCPA claims sound in fraud.  Therefore, they are subject to the heightened pleading requirements of Rule 9(b).  *See Spaulding*, *supra*, 714 F.3d at 781 (citation omitted).

1. Count I

In Count I, plaintiff lodges a claim under the MCPA based on allegations that "Defendants illegally and deliberately mislead [sic], and concealed the facts, and deceived Plaintiff in reference to the illegal kick backs and yield spread premium derived from the table funded loan."  Compl. ¶ 52. Plaintiff does not allege specific representations made by defendants to plaintiff regarding the loan, interest rates, or premium.  Moreover, plaintiff does not elucidate what facts were allegedly concealed from him, or explain how he relied on the misrepresentations and omissions with consequent actual injury or loss.  Nor does plaintiff identify when the alleged misrepresentations were made, or by whom.

Without more, plaintiff's allegations amount to "'bald assertions'" and "'legal conclusions'" that fall short of the heightened pleading requirement of Rule 9(b). Therefore, the claim is subject to dismissal, without prejudice.

### 2. Counts VII, XII, and XVI

Counts VII, XII, and XVI are all based on allegations that defendants violated the MCPA with respect to the filing of the foreclosure action. Count VII alleges that "Defendants negligently or intentionally engaged in deceptive and misleading practices," in violation of the MCPA, by robo-signing the documents filed in the foreclosure proceeding. Compl. ¶¶ 86-87.

Likewise, in Count XII plaintiff asserts that defendants filed false statements in the foreclosure proceeding and failed to "include any chain of assignments or other evidence in the foreclosure complaint which verifies who actually owns the Note and Deed of Trust and who has standing to foreclose under the Note and Deed of Trust." Compl. ¶¶ 109-110. According to plaintiff, defendants misled him "to believe that the broker, Bondcorp Realty Services, Inc. was the lender and had the legal right to assign the Deed [o]f Trust to MERS; when in fact Bondcorp is not a lender and is not a member of MERS which negates its right to assign the Deed of Trust to MERS." Based on these allegations, plaintiff asserts: "Defendants illegally and deliberately mislead [sic], and concealed the facts, and deceived Plaintiff in reference to who was the actual lender." Compl. ¶ 114.

In Count XVI, captioned "(Violation of the Maryland Consumer Protection Act) Forged Loan Documents," plaintiff contends that defendants engaged in deceptive and misleading practices in violation of the MPCA by "omitting to sufficiently verify and/or falsely certifying under 'penalty of perjury' that information required under Maryland law was true" and "failing

to give its residents of Maryland due process required by Maryland law."  Compl. ¶ 139. Willis asserts: "Plaintiff, alternatively, had a reasonable expectation created by Defendants that Defendants would provide truthful loan documents and comply with Maryland law." *Id.*

As with plaintiff's fraud claim, discussed *supra*, the Complaint fails to state a claim under the MCPA based on irregularities in the foreclosure filing. Plaintiff does not allege facts to show that he relied on defendants' misrepresentations or omissions, nor does he otherwise explain how the alleged errors in the foreclosure filings materially impacted plaintiff's circumstances or conduct.  *See Stewart*, 859 F. Supp. 2d at 769; *see also Currie v. Wells Fargo Bank, N.A.*, 950 F. Supp. 2d 788, 798 (D. Md. 2013) (finding that plaintiffs failed to state a misrepresentation claim under the MCPA because they "have not pleaded sufficient facts from which one can plausibly infer that these allegedly erroneous statements contained in judicial filings induced them to take any action or that they 'substantially' induced any choice"); *Farwell v. Story,* No. DKC–10–1274, 2010 WL 4963008, at *8–9 (D. Md. Dec. 1, 2010) (dismissing MCPA claim because plaintiff failed to allege reliance).

Further, plaintiff again fails to show that the purported irregularities caused him a specific harm. For example, plaintiff does not articulate any connection between the initiation of the foreclosure action and the purported irregularities with the foreclosure filings. Indeed, plaintiff does not dispute that he was in default on his loan obligations at the time the foreclosure action was filed, and the foreclosure proceeding was ultimately dismissed. *See Lloyd*, 397 Md. at 143, 916 A.2d at 277 ("[I]n order to articulate a cognizable injury under the Consumer Protection Act, the injury must be objectively identifiable. In other words, the consumer must have suffered an identifiable loss, measured by the amount the consumer spent or lost as a result of his or her

reliance on the sellers' misrepresentation."); *see also Marchese*, 917 F. Supp. 2d at 465 ("Because [plaintiff] made no allegations of false statements related to the Foreclosure Action beyond missing or incorrect signatures, and the action was dismissed with no new pending foreclosure proceeding filed in state court, the Court finds that [plaintiff] failed to state a claim under the MCPA regarding the Foreclosure Action."). Moreover, the allegations contained in Count XVI are conclusory, vague, and plainly fail to comply with the requirements of Fed. R. Civ. P. 9(b).

Accordingly, Counts VII, XII, and XVI will be dismissed, with prejudice.

3.  Count XX

In Count XX, plaintiff asserts that defendants violated the MCPA by misrepresenting the availability of loan modification programs. According to plaintiff, defendants gave plaintiff "wrong information to delay and prevent" him from obtaining a loan modification. Compl. ¶ 156.   Further, plaintiff alleges that "Defendants intentionally withhold government funds intended to save homeowners from foreclosure," and intentionally postpone homeowner requests to modify mortgages, which deprive borrowers of federal bailout funds. *Id.* at ¶ 157.  Willis also contends:  "Defendants failed to review and resolve Plaintiff's inquiries and complaints with fair consideration, and timely and appropriate responses and resolutions . . . ." Compl. ¶ 159.

According to plaintiff, "the systematic scheme of the Defendants to mislead, conceal and delay modifications was further revealed by employees and agents of the Defendants in the case of U.S.A. vs Bank of America, NA and BAC Home Loans Servicing, LP (Case 1:11-cv-03270-SLT-RLM) filed in U.S. District Court Eastern District of NY."  Compl. ¶ 160.  Plaintiff asserts

that "numerous" other cases brought against defendants "reveal the same type of servicing deceptive trade practices experience[d] by [him]." *Id.* at ¶ 161.

Plaintiff's allegations fail to show reliance on defendants' alleged misrepresentations and omissions as to the availability of loan modifications. Indeed, any assertions of reliance are undermined by plaintiff's letter of March 30, 2013, requesting a meeting "due to phone representatives of Defendants denying the existence of any principal reduction programs or other programs." *See* Compl. ¶ 155 (citing Compl. Exh. T). *Cf. Bey v. Shapiro Brown & Alt, LLP*, No. PWG-13-1562, 2014 WL 661586, at *7 (D. Md. Feb. 20, 2014) (concluding that plaintiff failed to state a claim under the MCPA because "Plaintiff's Amended Complaint shows that he opposed the requests for payment made by Defendants and therefore did not rely on Defendants' representations").

Moreover, plaintiff's vague assertions that he "suffered damages" are insufficient to allege that he sustained an actual injury or loss due to defendants' alleged violations of the MCPA. *Compare Willis v. Countrywide Home Loans Servicing,* No. CCB–09–1455, 2009 WL 5206475, at *6 (D. Md. Dec. 23, 2009) (dismissing MCPA claim because plaintiff failed to allege "that Countrywide's misinformation regarding loan modification programs caused [plaintiff] to suffer any specific harm, apart from the debt that he already owed") and *Murray v. Bierman, Geesing, Ward & Wood, LLC*, RWT 11CV1623, 2012 WL 4480679 (D. Md. Sept. 27, 2012) (dismissing plaintiff's MCPA claim because plaintiff could not "establish the nature of the actual injury or loss that he sustained, apart from the mortgage loan debt that he already owed," and plaintiff "alleged no other harm that he sustained as a result of Defendants' conduct) *with Currie*, 950 F. Supp. 2d at 797 (finding that defendant's alleged practice of "churning" loan

modification applications, whereby defendant stated it would consider plaintiffs for a loan modification even though it did not, "plausibly resulted in the misallocation of mortgage payments and/or charges beyond those for which Plaintiffs otherwise would have been liable").

Accordingly, Count XX will be dismissed, without prejudice.

### E. Breach of fiduciary duty (Counts II and XXI)

In Counts II and XXI, plaintiff asserts claims under Maryland common law for breach of fiduciary duty.  In plaintiff's view, BANA owed a fiduciary duty to him by virtue of its position "as a bank, mortgage company, and loan servicing company" for his loan.  Compl. ¶¶ 58, 166. Count II alleges that BANA breached its duty to plaintiff by concealing additional profits gained from illegally charging a "yield spread premium" to him.  *Id.* at ¶ 59.  Count XXI alleges that BANA breached its duty to plaintiff by concealing information and misleading him about the availability of loan modification programs, and by violating "their Servicer Participation Agreements with government entities."  *Id.* at ¶ 167.

For their part, defendants insist:  "Plaintiff's purported claims for breach of fiduciary duty fail because Maryland courts do not recognize a separate tort of breach of fiduciary duty under these circumstances."  ECF 10-1 at 12.  Defendants also contend that "the relationship of a bank to its customer is one that is contractual in nature and, therefore, a bank owes only those duties provided for under the contract and does not owe a special duty to its customer."  *Id.*

"A fiduciary relationship exists when one party is under a duty to act or give advice for the benefit of another."  Paul Mark Sandler & James K. Archibald, Pleading Causes Of Action in Maryland § 3.209.A at 436 (4th ed. 2008) ("Sandler") (citing Restatement (Second) of Torts §

874 cmt. a (1979); Restatement (Second) of Trusts § 2 cmt. b (1959)).   Of import here, the

Maryland Court of Appeals said in *Kann v. Kann*, 344 Md. 689, 713, 690 A.2d 509, 521 (1997):

> [T]here is no universal or omnibus tort for the redress of breach of fiduciary duty
> by any and all fiduciaries.  This does not mean that there is no claim or cause of
> action available for breach of fiduciary duty.  Our holding means that identifying
> a breach of fiduciary duty will be the beginning of the analysis, and not its
> conclusion.  Counsel are required to identify the particular fiduciary relationship
> involved, identify how it was breached, consider the remedies available, and
> select those remedies appropriate to the client's problem.

Later, in *International Brotherhood of Teamsters v. Willis Corroon Corp.*, 369 Md. 724,

801 A.2d 1050, (2002), the Maryland Court of Appeals reiterated, *id.* at 727 n.1, 801 A.2d at

1052 n.1:  "In *Kann v. Kann*, 344 Md. 689, 713, 690 A.2d 509, 520–21 (1997), we pointed out

that, although the breach of a fiduciary duty may give rise to one or more causes of action, in tort

or in contract, Maryland does not recognize a separate tort action for breach of fiduciary duty."

So, "[o]ne who breaches his or her duty as a fiduciary may be liable under various causes

of action to those harmed by the breach of that duty."  *Id.*  However, the cases and commentary

indicate that, under Maryland law, a claim for breach of fiduciary duty exists only "where the

breach is alleged as an element of the cause of action—not as a separate cause of action itself."

Sandler, § 3.209A at 436.[14]  *See also Wasserman Goldsten Family LLC v. Kay,* 197 Md. App.

586, 631–32, 14 A.3d 1193, 1219 (2011) (stating that, under Maryland law, a purported breach

of fiduciary duty does not "constitute a stand alone nonduplicative cause of action");

*Vinogradova v. Suntrust Bank*, 162 Md. App. 495, 510, 875 A.2d 222, 231 (2005) ("[U]nder

Maryland law, the two separately pleaded claims in [the] complaint," *i.e.*, a claim for negligence

---

[14]  Paul Sandler and James Archibald, the authors of *Pleading Causes of Action in
Maryland*, have said: "The [State trial] courts follow this interpretation, yet plaintiffs continue to
allege (unsuccessfully) breach of fiduciary duty as its own cause of action."   Sandler &
Archibald, *supra,* at § 3.209.A, at 438.

and a claim for breach of fiduciary duty, "condense to only one: the claim based on the tort of

negligence.").

To be sure, the post-*Kann* landscape has been a bit muddled. In *McGovern v. Deutsche

Post Global Mail, Ltd.*, Civ. No. JFM–04–0060, 2004 WL 1764088, at *12 (D. Md. Aug. 4,

2004), Judge J. Frederick Motz stated:

> Courts have not entirely agreed on how to interpret the language of *Kann.*
> Compare *Swedish Civil Aviation Admin. v. Project Mgmt. Enterprises, Inc.*, 190
> F. Supp. 2d 785, 801 (D. Md. 2002) (breach of fiduciary duty can be part of other
> causes of action, but no independent tort for breach of fiduciary duty, especially if
> alternative remedies available), *Kerby v. Mortgage Funding Corp.*, 992 F. Supp.
> 787, 803 (D. Md. 1998) (no universal tort of breach of fiduciary duty, at least
> where other remedies exist), *and Bresnahan v. Bresnahan*, 115 Md. App. 226,
> 235, 693 A.2d 1, 5 (1997) ("[i]n light of *Kann*, it is doubtful that *Hartlove [v.
> Maryland School for the Blind*, 111 Md. App. 310, 681 A.2d 584 (1996), *vacated,*
> 344 Md. 720, 690 A.2d 526 (1997),]'s creation of an independent tort of breach of
> fiduciary tort [sic] has survived") (dictum), *with Garcia v. Foulger Pratt
> Develop., Inc.*, 155 Md.App. 634, 682, 845 A.2d 16, 44 (2003) (*Kann* means that
> whether there is a tort for breach of fiduciary duty must be determined on a case-
> by-case basis), *and BEP, Inc. v. Atkinson*, 174 F. Supp. 2d 400, 405–06 (2001)
> (plaintiff did state claim for breach of fiduciary duty because requirements set
> forth in *Kann* were satisfied).

Judge Motz concluded: "I am persuaded that a careful reading of *Kann* and its progeny

leads to the conclusion that breach of fiduciary duty can give rise to a cause of action—that is, it

can be a component of a cause of action—but it cannot be a cause of action standing alone." *Id.*

at *12.

The case of *Kay*, *supra*, 197 Md. App. 586, 14 A.3d 1193, is also instructive. There, the

plaintiff sought, *inter alia*, money damages for breach of contract, negligence, and breach of

fiduciary duty. *Id.* at 631, 14 A.3d at 1219. The Maryland Court of Special Appeals noted that

Maryland law does not "obliterate the possibility of a separate cause of action for breach of

fiduciary duty *in an action seeking equitable relief.*" *Id.* (emphasis added). However, "*[i]n a*

*claim for monetary damages at law* . . . an alleged breach of fiduciary duty may give rise to a cause of action, but it does not, standing alone, constitute a cause of action." *Id.* (emphasis added). In affirming the trial court's ruling to dismiss that count, the appellate court concluded that the allegations in the plaintiff's breach of fiduciary duty claim were "relevant to other causes of action," such as breach of contract or negligence, but they did not "constitute a stand alone nonduplicative cause of action." *Id.* at 631–32, 14 A.3d at 1219.

In any event, as defendants note, "[i]t is well established that 'the relationship of a bank to its customer in a loan transaction is ordinarily a contractual relationship between debtor and creditor, and is not fiduciary in nature.'" *Kuechler v. Peoples Bank,* 602 F. Supp. 2d 625, 633 (D. Md. 2009) (quoting *Yousef v. Trustbank Savs., F.S.B.*, 81 Md. App. 527, 568 A.2d 1134, 1138 (1990)); *see Spaulding*, *supra*, 714 F.3d at 778 ("Banks typically do not have a fiduciary duty to their customers."). "'Courts have been exceedingly reluctant to find special circumstances sufficient to transform an ordinary contractual relationship between a bank and its customer into a fiduciary relationship or to impose any duties on the bank not found in the loan agreement.'" *Id.* (quoting *Parker v. Columbia Bank,* 91 Md. App. 346, 604 A.2d 521, 532 (1992)); *see Polek v. J.P. Morgan Chase Bank, N.A.*, 424 Md. 333, 366, 36 A.3d 399, 418 (2012).

Here, plaintiff has failed to plead special circumstances that would be sufficient to transform an ordinary contractual relationship with BANA into a fiduciary relationship. *See, e.g*, *Allen*, *supra*, 2011 WL 3425665, at *8 (dismissing plaintiffs' breach of fiduciary duty claim because they "failed to plead any special circumstances that would be sufficient to transform their ordinary contractual relationship with CitiMortgage into a fiduciary relationship"); *Rush v. Am. Home Mortgage, Inc.*, No. WMN-07CV-0854, 2009 WL 4728971, at *20 (D. Md. Dec. 3,

2009) (dismissing plaintiff's negligence and breach of fiduciary duty claims because she did "not allege[] any facts demonstrating that the Defendants consciously assumed any special duties toward Plaintiff beyond those of a normal lender/borrower relationship").

For the foregoing reasons, I will dismiss, with prejudice, plaintiff's breach of fiduciary duty claims in Counts II and XXI.

### F.  Unjust enrichment (Counts III, IX, XVIII, XXII)

In Counts III, IX, XVIII, and XXII, plaintiff alleges claims for unjust enrichment.  In support of his claims, plaintiff contends that defendants "wrongfully appropriated, retained or otherwise possessed funds" belonging to plaintiff by "collecting funds on the yield spread premium" (Count III), Compl. ¶ 63-64; filing robo-signed affidavits and forged loan documents in the foreclosure proceeding (Counts IX and XVIII), *id.* at ¶¶ 95-96, 147-148; and delaying loan modifications in order to collect higher fees and additional profits (Count XXII), *id.* at ¶¶ 171-172.  For their part, defendants argue that plaintiff fails to allege any of the required elements of an unjust enrichment claim to support his causes of action.  ECF 10-1 at 13. Further, defendants assert that the claim must be dismissed because the Note and Deed of Trust constitute an express contract that governs the rights of the parties.  *Id.*

In Maryland, "[a] claim of unjust enrichment is established when: (1) the plaintiff confers a benefit upon the defendant; (2) the defendant knows or appreciates the benefit; and (3) the defendant's acceptance or retention of the benefit under the circumstances is such that it would be inequitable to allow the defendant to retain the benefit without the paying of value in return." *Benson v. State*, 389 Md. 615, 651-52, 887 A.2d 525, 546 (2005) (citation omitted); *see also Hill v. Cross Country Settlements, LLC*, 402 Md. 281, 295, 936 A.2d 343, 351 (2007). "A successful

- 47 -

unjust enrichment claim serves to 'deprive the defendant of benefits that in equity and good conscience he ought not to keep, even though he may have received those benefits quite honestly in the first instance, and even though the plaintiff may have suffered no demonstrable losses.'" *Hill*, 402 Md. at 295-96, 936 A.2d 343 (quoting *Dep't of Hous. & Cmty. Dev. v. Mullen*, 165 Md. App. 624, 659, 886 A.2d 900 (2005), *cert. denied,* 391 Md. 579, 894 A.2d 546 (2006)).

Where the subject matter of the claim is governed by an express contract between the parties, a claim for unjust enrichment is not viable.  In *Janusz v. Gilliam*, 404 Md. 524, 537, 947 A.2d 560, 567 (2008), the Maryland Court of Appeals said: "In Maryland, a claim of unjust enrichment, which is a quasi-contract claim, may not be brought where the subject matter of the claim is covered by an express contract between the parties." (Internal quotation marks omitted).

*Cnty. Com'rs of Caroline Cnty. v. J. Roland Dashiell & Sons, Inc.*, 358 Md. 83, 747 A.2d 600 (2000), also provides guidance.  In that case, the Maryland Court of Appeals said, *id.* at 101, 747 A.2d at 610:  "We hold that, generally, quasi-contract claims such as quantum meruit and unjust enrichment cannot be asserted when an express contract defining the rights and remedies of the parties exists."  The court explained, *id.* at 100, 747 A.2d at 608-09:  "Generally, courts are hesitant to deviate from the principle of the rule and allow unjust enrichment claims only when there is evidence of fraud or bad faith, there has been a breach of contract or a mutual rescission of the contract, when rescission is warranted, or when the express contract does not fully address a subject matter."

Here, the Note and the Deed of Trust are contracts that govern the relationship between defendants and plaintiff as to the property, the loan's finance charges, and monthly payments due under the loan. *See Ramos v. Bank of Am., N.A.*, No. DKC 11-3022, 2012 WL 1999867, at *6 (D.

Md. June 4, 2012) ("Because the Promissory Note expressly defines the parties' obligations under the initial loan, an unjust enrichment claim will not lie on that basis."); *Coulibaly*, *supra*, 2011 WL 3476994, at *16 (dismissing a claim for unjust enrichment where plaintiffs alleged defendant was "unjustly enriched because it did not lower Plaintiffs' payments to the lowest level for which Plaintiffs were eligible under the HAMP guidelines" because "written mortgage instruments define[d] Plaintiffs' monthly payments"); *Sharma v. OneWest Bank, FSB*, No. DKC 11-0834, 2011 WL 5167762, at *7 (D. Md. Oct. 28, 2011) (dismissing an unjust enrichment claim, where plaintiff alleged defendant was unjustly enriched by taking possession of the property, because "the deed of trust define[d] Plaintiffs' rights and duties vis-à-vis OneWest and the property, and neither party dispute[d] the existence or validity of the deed of trust itself"). Therefore, an unjust enrichment claim is not viable.

In any event, plaintiff's unjust enrichment claims fail under *Iqbal* and *Twombly*, *supra*, because he has not adequately alleged a benefit conferred on defendants, which would be inequitable for defendants to retain. *See, e.g., Ramos*, 2012 WL 1999867, at *6 ("nowhere in the complaint are any non-conclusory facts set forth suggesting that Defendants obtained an unfair benefit"); *Bowers v. Bank of Am., N.A.*, 905 F. Supp. 2d 697, 703 (D. Md. 2012) (finding that plaintiff did not plead that defendant retained any benefit inequitably, so as to state a plausible claim for unjust enrichment, where the only benefit plaintiff pled that he conferred on defendant was "the value of his mortgage payments and interest, which were conferred in exchange for his home, property he apparently continues to own").

Accordingly, plaintiff's unjust enrichment claims will be dismissed, with prejudice.

### G. RESPA – Violation of 12 U.S.C. § 2605 (Count IV)

In Count IV, plaintiff explains that he asked Cohn for a copy of the Deed of Trust and the Note, as well as information regarding the funding of the loan and the purchasers of the Note. Compl. ¶¶ 67-69; *see* Plaintiff May 6, 2009 Letter ("Compl. Exh. B," ECF 2-2); Cohn February 5, 2010 Letter ("Compl. Exh. C," ECF 2-3).  He alleges that defendants violated 12 U.S.C. § 2605 of RESPA because Cohn, as defendants' agent, failed timely and fully to respond to plaintiff's letter of May 6, 2009, and did not allow him to view the original Note.  *See* Compl. ¶¶ 67-70.

RESPA requires a mortgage servicer to respond to a borrower's "qualified written request" ("QWR"). A QWR consists of written correspondence from a borrower that identifies the borrower and account at issue, and "includes a statement of the reasons for the belief of the borrower ... that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B).  At the time plaintiff wrote his letter, a servicer had twenty days to acknowledge receipt of a QWR and sixty days to respond. *See* 12 U.S.C. § 2605(e)(1)-(2) (2011).  However, as of January 10, 2014, servicers have five days to acknowledge receipt and thirty days to respond.  *See* Dodd–Frank Wall Street Reform and Consumer Protection Act, Pub. L. 111–203, § 1463(c), 124 Stat. 1376, 2184 (2010) (codified at 12 U.S.C. § 2605(e)(1)-(2)).

Within thirty days after receipt of a QWR, a servicer must (1) correct the error identified by the borrower  and notify the borrower of such correction; or (2) investigate the matters addressed by the request, and respond to the borrower in writing, explaining "the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer,"

or provide the "information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer." *Id.* § 2605(e)(2).  A servicer has

violation of this provision entitles a borrower to recover actual damages, as well as statutory damages in cases showing a "pattern or practice of noncompliance." *Id.* § 2605(f).

Under RESPA, a "servicer" is defined as "the person responsible for servicing of a loan (including the person who makes or holds a loan if such person also services the loan)." 12 U.S.C. § 2605(i)(2).  "Servicing," in turn, is defined as "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts described in section 2609 of this title, and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." *Id.* § 2605(i)(3).

According to defendants, the letter of May 6, 2009, "did not indicate a servicing 'error' committed by Defendants."  ECF 10-1 at 15.  Rather, they claim that the letter "disputed the validity of the entire debt and demanded certain documents and information."  *Id.*  They argue that plaintiff's claim fails because a letter requesting information to challenge a debt or negotiate a loan is not a QWR under RESPA.  *Id.*

"[T]he permissible scope of Qualified Written Requests under RESPA is limited to information related to the servicing of loans, specifically the receipt of payments from a borrower and the making of payments of principal and interest." *Dides v. Ocwen Loan Servicing, LLC,* Civ. No. WMN–12–2989, 2013 WL 2285371, at *2 (D. Md. May 21, 2013). Indeed, "[i]n determining whether a given request constitutes a QWR, courts have drawn a distinction between communications related to the servicing of the loan, which are covered under RESPA, and those

challenging the validity of a loan, which are not." *Minson v. CitiMortgage, Inc.*, No. DKC-12-2233, 2013 WL 2383658, at *4 (D. Md. May 29, 2013).

Here, a review of the letter of May 6, 2009, leads me to conclude that it served as a communication challenging the validity of the loan, and not as a communication related to the servicing of the loan, as contemplated by RESPA.  In particular, the letter does not identify errors with the servicing of plaintiff's account, ask questions relating to the servicing of the account, or say anything about defendants' receipt of scheduled payments or the amounts of such payments.  *See Minson*, 2013 WL 2383658, at *5 ("The document does not relate to 'servicing,' as that term is defined under RESPA, because it 'says nothing about defendant['s] receipt of scheduled periodic payments or the amounts of such payments.'") (quoting *Bravo v. MERSCORP, Inc.,* No. 12–CV–884 (ENVV) (LB), 2013 WL 1652325, at *3 (E.D.N.Y. Apr. 16, 2013)) (alteration in original); *Marsh v. BAC Home Loans Servicing,* No. 2:09–CV–813–FTM–29DNF, 2011 WL 1196415 at *8 (M.D. Fla. March 29, 2011) (notice did not qualify as a valid QWR where "[n]othing in the notice indicate[d] that there was a problem with the servicing of the loan (*e.g.*, the way BAC received plaintiffs' scheduled periodic payments due under the loan)"); *Hintz v. JPMorgan Chase Bank, N.A.*, No. 10–2825, 2011 WL 579339 at *8 (D. Minn. Feb. 8, 2011) (finding that "the letters were not QWRs because Plaintiffs did not identify purported errors in their account or ask questions related to Chase's servicing of their loan," and because "Plaintiffs' letters had no relation to Chase's receipt or application of their payments"); *Vazquez v. M&T Bank Corp.*, No. 1:10-CV-23794, 2011 WL 241958, at *2 (S.D. Fla. Jan. 24, 2011) (finding that plaintiff's letters did not qualify as QWRS where plaintiff made no request for information regarding the servicing of the loan, did not include a statement of the reasons for

plaintiff's belief that the account was in error, and did not indicate that there was a problem with the way that defendant received plaintiff's scheduled periodic payments under the loan).

The letter indicates that plaintiff disputed the balance due under the loan.  *See* Compl. Exh. B ("I am disputing the entire debt of $348,453.81 included in your April 28, 2009 letter."). However, this bare assertion does not provide "sufficient detail" as to why plaintiff believed the balance was incorrect.  *See Minson*, 2013 WL 2383658, at *4; *Marsh*, 2011 WL 1196415 at *8. As to the numerous documents plaintiff sought in his letter of May 6, 2009, this is "not the type of information RESPA contemplates."  *Junod v. Dream House Mortg. Co.,* No. 11–7035–ODW, 2012 WL 94355, at *3-4 (C.D. Cal. Jan. 5, 2012) (explaining that copies of the promissory note, deed of trust, and "a complete life of loan transactional history" are "not the type of information RESPA contemplates"); *see also Dides*, 2013 WL 2285371, at *2 (explaining that under RESPA "[t]here is no requirement that servicers provide 'original documents of any transfers'"); *Ward v. Security Atlantic Mortg. Electronic Registration Systems, Inc.*, 858 F. Supp. 2d 561, 574–75 (E.D.N.C. 2012) (finding that plaintiff's letter was not a QWR where the letter sought "*inter alia* copies of loan documents, assignments of the deed of trust and promissory note and copies of property inspection reports and appraisals and a loan transactional history").  Because the letter of May 6, 2009, did not constitute a valid QWR, defendants cannot be liable under RESPA for failing to respond to it.

Plaintiff's claim under 12 U.S.C. § 2605(e) fails for the independent reason that he has not sufficiently pleaded damages.  Plaintiff asserts, without any supporting facts, that he "suffered damages" as a result of the purported violation of § 2605(e).  This conclusory assertion is insufficient to show plausibly that actual damages arose from the failure to adequately respond

to the letter of May 6, 2009.  *See Radisi v. HSBC Bank USA, Nat. Ass'n*, No. 5:11CV125-RLV, 2012 WL 2155052, at *5 (W.D.N.C. June 13, 2012) ("Plaintiff's assertion of damages without any supporting facts as to how he was damaged by the failure to respond to the QWR's is insufficient to establish a claim for violation of RESPA."), *aff'd sub nom. Radisi v. HSBC Bank USA, N.A.*, 479 F. App'x 468 (4th Cir. 2012); *Bradford*, 2010 WL 9067298, at *7 ("The conclusory assertion that plaintiff is entitled to 'actual damages,' is insufficient to show a plausible claim for actual damages arising from HSBC's failure to respond adequately to the QWR" (internal citation omitted)); *see also Hutchinson v. Delaware Sav. Bank FSB*, 410 F. Supp. 2d 374, 383 (D.N.J. 2006) ("[A]lleging a breach of RESPA duties alone does not state a claim under RESPA.  Plaintiffs must, at a minimum, also allege that the breach resulted in actual damages."); *see also*, *e.g.*, *Bravo*, 2013 WL 1652325, at *3; *Ward v. Sec. Atl. Mortgage Elec. Registration Sys., Inc.*, 858 F. Supp. 2d 561, 575 (E.D.N.C. 2012); *Bishop v. Quicken Loans, Inc.*, No. 2:09-01076, 2010 WL 3522128, at *6 (S.D.W. Va. Sept. 8, 2010).

Accordingly, I will dismiss plaintiff's RESPA claim, with prejudice.

## H. FDCPA (Counts V and XIV)

In Counts V and XIV, plaintiff alleges that defendants violated the FDCPA.  "The FDCPA protects consumers from abusive and deceptive practices by debt collectors, and protects non-abusive debt collectors from competitive disadvantage."  *United States v. Nat'l Fin. Servs. Inc.,* 98 F.3d 131, 135 (4th Cir. 1996) (citing 15 U.S.C. § 1692e).  "To establish a FDCPA claim, a plaintiff must prove that: '(1) the plaintiff has been the object of collection activity arising from consumer debt; (2) the defendant is a debt collector as defined by the FDCPA; and (3) the defendant has engaged in an act or omission prohibited by the FDCPA.'"  *Boosahda v.*

*Providence Dane LLC*, 462 F. App'x 331, 333 (4th Cir. 2012) (quoting *Ruggia v. Wash. Mut.,* 719 F. Supp. 2d 642, 647 (E.D. Va. 2010)).

According to plaintiff, defendants filed "false, fabricated, or counterfeit" affidavits and loan documents to support foreclosure on plaintiff's property, Compl. ¶ 75, 127, and these filings constituted a "false representation or deceptive means to collect a consumer debt," in violation of the FDCPA.  Compl. ¶¶ 75-76, 127-28.  Plaintiff asserts that defendants, through their agent Cohn, are debt collectors as defined by the FDCPA, Compl. ¶¶ 73, 126; that plaintiff is a consumer, as defined by the FDCPA, *id.* at ¶¶ 72, 124; and that the mortgage is a "debt," as defined by the FDCPA.  *Id.* at ¶¶ 73, 125.  In defendants' view, plaintiff's claims fail because defendants are not debt collectors under the FDCPA and plaintiff has not alleged that defendant engaged in debt collection activity.  ECF 10-1 at 15.

"The FDCPA's provisions generally apply only to 'debt collectors.'"  *Pollice v. Nat'l Tax Funding,* L.P., 225 F.3d 379, 400 (3d Cir. 2000) (citing *Pettit v. Retrieval Masters Creditors Bureau, Inc.*, 211 F.3d 1057, 1059 (7th Cir. 2000)); *accord Scott v. Wells Fargo Home Mortgage Inc.*, 326 F. Supp. 2d 709, 717 (E.D. Va. 2003), *aff'd*, 67 F. App'x 238 (4th Cir. 2003).  The FDCPA defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6).  The term excludes

> any person collecting or attempting to collect any debt owed or due or asserted to
> be owed or due another to the extent such activity (i) is incidental to a bona fide
> fiduciary obligation or a bona fide escrow arrangement; (ii) concerns a debt which
> was originated by such person; (iii) *concerns a debt which was not in default at*
> *the time it was obtained by such person;* or (iv) concerns a debt obtained by such

person as a secured party in a commercial credit transaction involving the creditor.

*Id.* § 1692a(6)(F) (emphasis added).

Willis alleges that defendants were the servicer of the loan. Compl. ¶¶ 2, 4. It is well-settled that the servicer of a loan is not a "debt collector" under the FDCPA if it began servicing the loan before the borrower's default. *Minson*, *supra*, 2013 WL 2383658, at *6 (citing *Patrick v. PHH Mortgage Corp.*, 937 F. Supp. 2d 773 (N.D.W. Va. 2013)); *see also, e.g.*, *Jesse v. Wells Fargo Home Mortg.*, 882 F. Supp. 2d 877, 879 (E.D. Va. 2012) ("Here, Wells Fargo is a servicer of residential mortgage loans, not a debt collector, and is, therefore, exempt from the FDCPA." (internal citation omitted)); *Taggart v. Wells Fargo Home Mortg., Inc.,* 2010 WL 3769091, at *11 (E.D. Pa. Sept. 27, 2010) ("Loan servicers are not 'debt collectors' under the FDCPA unless the debt being serviced was in default at the time the servicer obtained it."). In other words, if defendants were handling the loan before it went into default, defendants do not qualify as debt collectors for the purposes of the FDCPA. *See Parker v. BAC Home Loans Servicing LP*, 831 F. Supp. 2d 88, 93 (D.D.C. 2011).

Plaintiff does not allege that he was in default at the time that defendants began servicing his loans. This is fatal to plaintiff's FDCPA claims. *See Brumberger v. Sallie Mae Servicing Corp.*, 84 F. App'x 458, 459 (5th Cir. 2004) ("By its plain terms the FDCPA does not apply to Sallie Mae because [plaintiff] does not allege that he was in default at the time Sallie Mae began servicing his loans."); *Edmond v. Am. Educ. Servs.*, No. 10-0578(JDB), 2010 WL 4269129, at *5 (D.D.C. Oct. 28, 2010) ("Absent an allegation that plaintiff's loan was in default when [defendant] acquired it, [defendant] is not a debt collector and thus is not subject to the FDCPA."); *Sparrow v. SLM Corp.*, No. RWT-08-00012, 2009 WL 77462, at *3 (D. Md. Jan. 7,

2009) ("[T]here is no allegation or factual support that Plaintiff's loans were in default if and when they were received by Sallie Mae and thus there is no basis for holding Sallie Mae subject to the FDCPA as a 'debt collector.'").

Even if defendants were subject to the FDCPA, however, plaintiff's FDCPA claims also fail because his Complaint does not contain sufficient allegations to demonstrate that defendants' conduct is actionable under the statute. Plaintiff alleges violations of 15 U.S.C. §§ 1692e(5), 1692e(10), and 1692f.  In relevant part, § 1692e provides:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section ...
>
> (5) The threat to take any action that cannot legally be taken or that is not intended to be taken ...
>
> (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or obtain information concerning a customer.

Pursuant to § 1692f, "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." "Although not exhaustive, the statute does provide a list of conduct that violates the section. Additionally, the section allows the court to punish any other unfair or unconscionable conduct not covered by the FDCPA." *Lembach*, 528 F. App'x at 303 (citing § 1692f).

The Fourth Circuit employs the "least sophisticated consumer" standard to determine if a violation of § 1692e has occurred.  *Id.* at 302. "Under this standard, a false statement that would not mislead the 'least sophisticated consumer' is not actionable."  *Id.* (citing *United States v. Nat'l Fin. Servs., Inc.,* 98 F.3d 131, 135-36 (4th Cir. 1996)).  In order for a violation of § 1692e or § 1692f to occur, the misrepresentation must be material.  *Id.* at 303. As with plaintiff's fraud

and MCPA claims, discussed *supra*, plaintiff's FDCPA claims fail because he has not offered allegations showing that the misrepresentations at issue were material.

Moreover, with respect to plaintiff's allegation that defendants violated § 1692f, "the courts use § 1692f to punish conduct that FDCPA does not specifically cover." *Lembach*, 528 F. App'x at 304. "A complaint will be deemed deficient under this provision if it 'does not identify any misconduct beyond which [p]laintiffs assert violate other provisions of the FDCPA.'" *Johnson v. BAC Home Loans Servicing, LP*, 867 F. Supp. 2d 766, 782 (E.D.N.C. 2011) (quoting *Foti v. NCO Fin. Sys., Inc.,* 424 F. Supp. 2d 643, 667 (S.D.N.Y. 2006)) (alteration in original); *see also Edwards v. McCormick,* 136 F. Supp. 2d 795, 806 (S.D. Ohio 2001) (explaining that "§ 1692f serves a backstop function, catching those 'unfair practices' which somehow manage to slip by §§ 1692d & 1692e").

With respect to his § 1692f claim, plaintiff does not allege any conduct separate and distinct from the alleged § 1692e violations. Rather, plaintiff anchors his § 1692f claim on the same allegations used to support his § 1692e claim. *See*, *e.g.*, *Stewart*, *supra*, 859 F. Supp. 2d at 765 (dismissing plaintiff's § 1692f claim because all of plaintiff's allegations were asserted for actions arising under § 1692e, and plaintiff did not allege "any separate facts that contend that Defendants engaged in unfair or unconscionable practices under § 1692f"); *Johnson*, 867 F. Supp. 2d at 782 ("[T]he amended complaint does not identify any additional misconduct to support a section 1692f claim. . . . Plaintiffs' failure to allege other conduct that was unfair and unconscionable under section 1692f warrants dismissal of this claim.").

Accordingly, plaintiff's FDCPA claims will be dismissed, with prejudice.

**I.   Violation of  R.P. § 7-105.1 and § 7-105.2 (Counts VI and XV)**

In Counts VI and XV, captioned "Wrongful Foreclosure Filing", plaintiff alleges that defendants failed to comply with § 7-105.1 and § 7-105.2 of the Real Property Article of the Maryland Code ("R.P."), by filing "false, fabricated, and counterfeit" affidavits and loan documents in support of the foreclosure proceeding.  Compl. ¶¶ 82-83, 134-135.

R.P. §§ 7–105.1 and 7–105.2 "regulate the notices to be given and procedures to be followed in the state foreclosure process."  *Stewart*, *supra*, 859 F. Supp. 2d 754 at 766; *see also Bates v. Cohn,* 417 Md. 309, 9 A.3d 846 (2010); Md. Rules 14-201 *et seq*.  After ratification of the sale, plaintiff has three years within which to bring a cause of action pursuant to R.P. § 7-105.1 and § 7-105.2 if these notices are not given or these procedures are not followed.  *Id.*; *see* R.P. § 7–105.1(o) ("An action for failure to comply with the provisions of this section shall be brought within 3 years *after* the date of the order ratifying sale.") (emphasis added); *id*. § 7–105.2(e) ("The right of a record owner to file an action for failure of the person authorized to make a sale in an action to foreclose a mortgage or deed of trust to comply with the provisions of this section shall expire 3 years *after* the date of the order ratifying the foreclosure sale.") (emphasis added).

The Fourth Circuit has described R.P. § 7–105.1 as a statute that "simply addresses actions brought in response to the *in rem* variety of foreclosures—those which the mortgagor did not challenge directly in the first instance."  *Jones v. HSBC Bank,* 444 F. App'x 640, 645 (4th Cir. 2011).  The Court explained: "[W]hen the mortgagor appears and raises objections to the initial foreclosure action, he loses the opportunity to later collaterally attack the resulting judgment.  In other words, the mortgagor is entitled to litigate his objections only once: he may

defend against the original foreclosure action directly, or he may bring a separate, offensive suit *within three years of the sale*; he may not do both." *Id.* (emphasis added).

As defendants argue, plaintiff's claims are premature. Any cause of action under R.P. § 7-105.1 and § 7-105.2 has yet to accrue because there has been no sale or ratification of sale. *See Stewart*, 859 F. Supp. 2d at 766 (granting defendant's motion to dismiss as to plaintiff's claims under §§ 7-105.1 and 7-105.2 because plaintiff's house was not subject to a foreclosure action, and had not been sold); *see also Doe v. Virginia Dep't of State Police*, 713 F.3d 745, 758 (4th Cir. 2013) (explaining that a claim "should be dismissed as unripe if the plaintiff has not yet suffered injury and any future impact remains wholly speculative" (internal quotation marks omitted)). Accordingly, plaintiff's claims for wrongful foreclosure will be dismissed, with prejudice.

**J. Injunctive/declaratory relief (Counts X and IXX)**

In Counts X and IXX, captioned "Injunctive/Declaratory Relief," plaintiff alleges that he is entitled to a declaration that defendants breached "their contractual, statutory and common law obligations to Plaintiff" by filing robo-signed affidavits and forged loan documents in the foreclosure proceeding, "and that Plaintiff is lawfully released from any deficiency on the Note Plaintiff had entered into with Defendants." Compl. ¶¶ 99, 151. Further, plaintiff requests that "this Court release him from any obligation to pay Defendants [sic] Note . . . ." *Id.* ¶¶ 100, 152.

In the federal courts, declaratory judgments are authorized by the federal Declaratory Judgment Act, 28 U.S.C. § 2201, which provides that, in "a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration." A

federal court may properly exercise jurisdiction in a declaratory judgment proceeding when three requirements are met: "(1) the complaint alleges an actual controversy between the parties of sufficient immediacy and reality to warrant issuance of a declaratory judgment; (2) the court possesses an independent basis for the jurisdiction over the parties (e.g., federal question or diversity jurisdiction); and (3) the court does not abuse its discretion in its exercise of jurisdiction." *Volvo Const. Equipment North America, Inc. v. CLM Equipment Co., Inc.*, 386 F.3d 581, 592 (4th Cir. 2004) (internal quotation marks and citation omitted). "A case meets the actual controversy requirement only if it presents a controversy that qualifies as an actual controversy under Article III of the Constitution." *Id.* To satisfy the case-or-controversy requirement of Article III of the United States Constitution, courts must determine "whether the facts alleged, under all the circumstances, show there is a substantial controversy, between the parties having adverse legal interest, of sufficient immediacy and reality to warrant relief." *Medimmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 133–34 (2007) (citations omitted).

As noted, plaintiff seeks a declaration that defendants breached "their contractual, statutory and common law obligations to Plaintiff" by filing robo-signed affidavits and forged loan documents in the foreclosure proceeding, and that plaintiff is released from any obligation to pay the Note. Defendants insist that plaintiff is not entitled to declaratory relief because he fails to allege facts showing a controversy between the parties of sufficient immediacy so as to warrant declaratory relief. ECF 10-1 at 18. To that end, defendants contend that plaintiff does not dispute that he obtained the loan or that he owes payments on the loan pursuant to the Note and Deed of Trust. *Id.* at 19.

Although defendants filed an action to foreclose on plaintiff's property in 2010, defendants abandoned that action. *See* Compl. at ¶ 22. As such, there is no "sufficiently ripe controversy" to warrant a declaratory judgment at this time. *See Lomp v. U.S. Mortgage Fin. Corp.*, No. WMN-13-1099, 2013 WL 6528909, at *4 (D. Md. Dec. 11, 2013) (finding that "no justiciable controversy exist[ed], and a declaratory judgment [was] not appropriate," where defendants had previously filed two actions to foreclose on the property, but there was "no existing effort to enforce the Note or Deed of Trust through foreclosure" at the time plaintiff filed suit); *Gooden v. Wells Fargo Home Mortgage*, No. AW-08-2521, 2010 WL 1068119 (D. Md. Mar. 17, 2010) ("The Court finds that there is no case-or[-]controversy within the meaning of the Declaratory Judgment Act with respect to the foreclosure action, or any related claims, because Defendant has not foreclosed on the property and appears to have foregone the foreclosure action against the Plaintiffs."); *see also Chalk v. PNC Bank, Nat. Assn'n*, No. CCB-11-3052, 2012 WL 2915289, at *3 (D. Md. July 16, 2012) ("When Chalk filed her Complaint, there was no existing effort to enforce her deed of trust though a power of sale foreclosure. Essentially, Chalk seeks an advisory opinion as to whether any future attempt at power of sale foreclosure would be valid under Maryland law. That is not the purpose of a declaratory judgment."); *Void v. OneWest Bank*, No. DKC-11-0838, 2011 WL 3240478 (D. Md. July 27, 2011) ("[I]nsofar as Plaintiff seeks a declaration that any foreclosure is invalid, he has failed to allege that such a proceeding has commenced. In this regard, his claim for declaratory relief is also not ripe.").

In any event, it does not follow that plaintiff would be released from paying the Note due to errors in the foreclosure proceeding.   Accordingly, I will dismiss plaintiff's request for declaratory judgment, with prejudice.

### K.  Breach of contract claims (Counts VIII and XVII)

In Counts VIII and XVII, plaintiff lodges claims for breach of contract and breach of the covenant of good faith and fair dealing.  He asserts: "Defendants in respective Deeds of Trust, Notes, and related documents agreed to comply with Maryland law in accelerating or foreclosing on Plaintiff's residential property."  Compl. ¶¶ 91, 143.  Further, plaintiff contends: "Defendants had an obligation to perform in good faith pursuant to the loan agreement."  *Id*.  In plaintiff's view, defendants breached the parties' agreement by submitting robo-signed affidavits and forged loan documents.  *Id.* ¶¶ 92, 144.

Defendants counter that plaintiff's breach of contract claims fail because plaintiff has not alleged facts showing a contractual obligation or breach of that obligation with the requisite "certainty and definiteness."  ECF 10-1.  In particular, defendants insist that plaintiff fails to allege the contractual provisions that defendant purportedly breached, how the provisions were breached, and when the provisions were breached.  *Id.*

In an action for breach of contract under Maryland law, a complaint must "'allege with certainty and definiteness facts showing a contractual obligation owed by the defendant to the plaintiff and a breach of that obligation by defendant.'"  *Polek v. J.P. Morgan Chase Bank, N.A.*, 424 Md. 333, 362, 36 A.3d 399, 416 (2012) (quoting *Cont'l Masonry Co. v. Verdel Constr. Co.*, 279 Md. 476, 480, 369 A.2d 566, 569 (1977)) (emphasis omitted); *see Decohen v. Capital One, N.A.*, 703 F.3d 216, 227 (4th Cir. 2012).  "A breach of contract is a failure without legal excuse

to perform any promise which forms the whole or part of a contract . . . ." *Weiss v. Sheet Metal Fabricators, Inc.,* 206 Md. 195, 110 A.2d 671, 675 (1955) (citation and internal quotation marks omitted); *see also* 23 WILLISTON ON CONTRACTS § 63:1 (4th ed. West 2014).

I agree with defendants that plaintiff has failed adequately to plead a claim for breach of contract. In particular, plaintiff has failed to identify any terms in the Note, Deed of Trust, or any other contract that defendants purportedly breached. *See Parillon v. Fremont Inv. & Loan*, No. L-09-3352, 2010 WL 1328425, at *4 (D. Md. Mar. 25, 2010) (dismissing plaintiff's breach of contract claim where plaintiff did "not identify a term set forth in the Loan, the Deed of Trust, or any other contract, that a named defendant breached"). Nor has plaintiff specifically identified how defendants breached the contract by submitting the allegedly fraudulent affidavits and loan documents. In sum, plaintiff's conclusory allegations are insufficient to plead this claim.

Plaintiff's attempt to state a claim for breach of contract based on breach of the implied covenant of good faith and fair dealing is likewise unavailing. *See generally Swedish Civil Aviation Admin. v. Project Mgmt. Enterprises, Inc.*, 190 F. Supp. 2d 785, 794 (D. Md. 2002) (explaining that the duty of good faith and fair dealing is "part of an action for breach of contract"). The covenant of good faith and fair dealing, implied in all negotiated contracts in Maryland, "*is limited to* prohibiting one party from acting in such a manner as to prevent the other party from performing his obligations under the contract." *Edell & Assocs., P.C. v. Law Offices of Peter G. Angelos,* 264 F.3d 424, 444 (4th Cir. 2001) (emphasis in original); *see E. Shore Markets, Inc. v. J.D. Associates Ltd. P'ship*, 213 F.3d 175, 182 (4th Cir. 2000). "The covenant does not extend to imply a general duty of good faith and fair dealing in the

performance of obligations under the contract that do not implicate or impair another party's performance under the contract." *Edell & Assocs., P.C.*, 264 F.3d at 444.

Because plaintiff has not alleged that defendants prevented him from performing his duty under the contract, he fails to state a claim based on breach of the duty of good faith or fair dealing. *See id.* (affirming summary judgment for defendant because plaintiffs did not allege that defendant "prevented them from performing their obligations under the alleged contract at issue," but instead sought "redress for [defendant's] alleged lack of good faith and fair dealing in performing its obligations under the alleged contract"); *Woodrow v. Vericrest Fin., Inc.*, No. AW-09-1612, 2009 WL 4348594, at *4 (D. Md. Nov. 30, 2009) ("Thus, because Plaintiff has not alleged that Defendant prevented it from performing its duty under the contract, it fails to make out a claim for breach of good faith or fair dealing."). Accordingly, plaintiff's claim for breach of contract will be dismissed, without prejudice.

## L.  BAC as a named defendant

Defendants contend that BAC is improperly named as a party to the lawsuit. Therefore, they seek dismissal of the Complaint in its entirety as to BAC. ECF 10-1 at 22. I will address this argument, despite the fact that all claims are being dismissed, because I am granting leave to amend. As such, the issue is likely to arise again.

According to defendants, BAC is a "holding company, not a bank," and "does not originate, own, or service loans, and is not a successor in interest to Bank of America, N.A." *Id.* Therefore, defendants assert, BAC was not involved in the origination or servicing of plaintiff's loan. *Id.* In defendants' view, plaintiff's claims against Bank of America Corporation are based on the sole allegation that Bank of America, N.A. is a subsidiary of Bank of America

Corporation, and this allegation is insufficient to state a claim against Bank of America Corporation.  *Id.* at 22-23.

In his Complaint, plaintiff alleges that "Countrywide Home Loans Servicing, L.P. was purchased by Bank of America N.A. who continued servicing Countrywide's mortgages in the name of BAC Home Loans Servicing, LP.  Then Bank of America, N.A. replaced BAC Home Loans Servicing, LP with Bank of American [sic] Home Loans as the servicer for mortgage loans."  Compl. ¶ 2.  According to plaintiff, "Bank of America Home Loans is a subsidiary of Bank of America N.A. and Bank of America N.A. is a subsidiary of Bank of America Corporation[.]"  *Id.*  In his Opposition, plaintiff objects to dismissal of Bank of America Corporation on the basis that Bank of America Corporation "owns 100% of Bank of America, NA, and BAC has total control or [sic] the revenues and management of the company and could take funds from the company to prevent payment of a suit."  ECF 18 at ¶ 28.

Plaintiff does not set forth allegations as to BAC, other than its corporate relationship to Bank of America Home Loans and Bank of America N.A.  This is insufficient to state a direct claim against BAC.  Moreover, plaintiff fails to set forth allegations that would warrant piercing the corporate veil and holding BAC responsible for any liability that its subsidiaries may have incurred.

It is well settled that "[a] corporation exists as a legal entity separate and distinct from its corporate shareholders."[15]  *Cancun Adventure Tours, Inc. v. Underwater Designer Co.,* 862 F.2d

---

[15]  I assume, for the purposes of this Motion, that Maryland law would apply to the question of veil piercing. *See, e.g., Ramlall v. MobilePro Corp.*, 202 Md. App. 20, 30, 30 A.3d 1003, 1009 (2011) (applying Maryland law where plaintiff sought to pierce veil of Delaware corporation for failure to pay bonus fee, allegedly in violation of Maryland Wage Payment and Collection Law).

1044, 1047 (4th Cir. 1988).  Therefore, "[u]nder the doctrine of limited liability, a shareholder—including a corporate parent—may not be held liable for the acts of a corporation."  *Allen v. Bank of Am. Corp.*, No. CCB-11-33, 2011 WL 3654451, at *4 (D. Md. Aug. 18, 2011) (citing *Johnson v. Flowers Indus., Inc.,* 814 F.2d 978, 980 (4th Cir.1987)).  "Th[is] concept is expressed by the colorful metaphor of the corporate veil, which presumes that acts of the corporation are not acts of the shareholder."  *Johnson,* 814 F.2d at 980. The corporate veil doctrine "is a basic attribute of the corporate form; it encourages business investment and fosters stability in commercial transactions."  *Cancun Adventure,* 862 F.2d at 1047.

In *Bart Arconti & Sons, Inc. v. Ames—Ennis, Inc.,* 275 Md. 295, 340 A.2d 225, 234 (1975), the Maryland Court of Appeals observed that, in the absence of fraud or unless necessary to enforce a paramount equity, shareholders are generally not liable for the acts of a corporation. The court stated that "although courts will, in a proper case, disregard the corporate entity and deal with substance rather than form, as though a corporation did not exist, shareholders generally are not held individually liable for debts or obligations of a corporation except where it is necessary to prevent fraud or enforce a paramount equity."  *Id.* at 310, 340 A.2d at 234; *accord Ramlall,* 202 Md. App. at 30, 30 A.3d at 1009.

In *Cancun Adventure, 862* F.2d at 1047, the Fourth Circuit recognized that "[s]ubstantial ownership of a corporation by a single individual is not alone sufficient to pierce the corporate veil."  Although the *Cancun* Court acknowledged that the corporate veil "is not sacrosanct," it cautioned: "A court's power to pierce the corporate veil and impose liability on a shareholder in his individual capacity [must] be exercised with extreme circumspection."  *Id.*  With respect to a parent corporation and its subsidiary, a court will pierce the corporate veil to reach a parent

corporation when the parent "dominates [its] subsidiary 'to the extent that the subservient corporation manifests no separate corporate interests of its own and functions solely to achieve the purposes of the dominant corporation.'" *Johnson,* 814 F.2d at 981 (citation omitted).

The Complaint fails to allege facts that would support the inference that the corporate relationship between BAC and its subsidiaries justifies piercing the corporate veil. As noted, plaintiff attempts to salvage his claim against BAC by alleging in his Opposition that it "owns 100% of Bank of America, NA, and BAC has total control or [sic] the revenues and management of the company and could take funds from the company to prevent payment of a suit." ECF 18 at ¶ 28. However, even if plaintiff were to amend his Complaint to contain such an averment, this allegation as to the control exerted by BAC over Bank of America, N.A. is entirely conclusory. Indeed, when a plaintiff seeks to pierce the corporate veil, the complaint must offer more than general and conclusory allegations of fraud, undue control exercised by a parent over its subsidiary, or paramount equity. *Antigua Condo. Ass'n v. Melba Invs. Atl., Inc.*, 307 Md. 700, 736, 517 A.2d 75, 93 (1986).

Plaintiff does not allege that BAC itself committed, inspired, or participated in the wrongs alleged. Moreover, plaintiff does not claim that BAC held an interest in plaintiff's mortgage debt. And, plaintiff does not assert facts showing that BAC communicated with or serviced plaintiff's debt payments. *See id.* ("The Plaintiffs do not allege any ground of [the parents corporation's] liability to them which is independent of [the subsidiary's] alleged liability to them. The entire thrust of the allegations against [the parent corporation] is an attempt to reach [it] through piercing the corporate veil of [the subsidiary].". Moreover, there is no claim that the parent and subsidiary commingled funds or assets, or that the parent misused funds of

the subsidiary, or otherwise disregarded the corporate structure. *See Cancun Adventure,* 862 F.2d at 1047-48.

In the context of a motion to dismiss, I am required to assume the truth of all factual allegations, construing them in the light most favorable to the plaintiff. But, plaintiff has failed to plead facts that would warrant holding BAC liable. Plaintiff's allegation that "Bank of America N.A. is a subsidiary of Bank of America Corporation" is insufficient to state a claim against BAC. Accordingly, I will dismiss the Complaint against BAC, with prejudice.

## II. Motion for remand

As noted, plaintiff has moved to remand the case to the Circuit Court for Baltimore City. The Motion will be denied.

### A. Timeliness

Under 28 U.S.C. § 1446(b)(2)(B), "[e]ach defendant shall have 30 days after receipt by or service on that defendant of the initial pleading or summons . . . to file the notice of removal." "If defendants are served at different times, and a later-served defendant files a notice of removal, any earlier-served defendant may consent to the removal even though that earlier-served defendant did not previously initiate or consent to removal." *Id.* at § 1446(b)(2)(C).

In support of his motion for remand, plaintiff alleges that removal was untimely because defendants were served on August 6, 2013, "through their Attorney Samuel I. White, PC," and "removal was not requested within thirty (30) days of service pursuant to 28 U.S.C. 1446." *Id.* at ¶ 2. Removal was timely, defendants counter, because "service upon Samuel I. White, P.C., did not constitute proper service for the purposes of this proceeding. Rather, Defendants were properly served through their registered agent by certified mail on August 7, 2013 and August 8,

2013, respectively."  ECF 17; *see* Service of Process Transmittal 08/07/13 (Def. Exh. A, ECF 17-1); Service of Process Transmittal 08/08/2013 (Def. Exh. B, ECF 17-2).

BANA was served on August 7, 2013, because on that date, by certified mail, the Complaint and Summons were received by the Corporation Trust Incorporated, BANA's agent for legal process.  *See* Def Exh. A, ECF 17-1.  On August 8, 2013, BAC was served by certified mail addressed to the Corporation Trust Incorporated, BAC's agent for legal process.  *See* Def. Exh. B, ECF 17-2.  Therefore, the thirty-day period for BAC to file the notice of removal would have expired on Saturday, September 7, 2013.  However, Fed. R. Civ. P. 6(a)(1) provides: "When the period is stated in days or a longer unit of time: (A) exclude the day of the event that triggers the period; (B) count every day, including intermediate Saturdays, Sundays, and legal holidays; and (C) include the last day of the period, but if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday."

Because the last day of the thirty-day period was a Saturday, the filing deadline for the notice of removal was the following business day, Monday, September 9, 2013.  BAC, the last-served defendant, filed its notice of removal on September 9, 2013.  Therefore, the notice of removal was timely.  Accordingly, plaintiff's objection to removal on the basis of timeliness is without merit.

## B.  Diversity Jurisdiction

Under 28 U.S.C. § 1332(a)(1), the federal district courts have subject matter jurisdiction over "civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States."  This so-called

diversity jurisdiction "requires complete diversity among parties, meaning that the citizenship of every plaintiff must be different from the citizenship of every defendant." *Cent. W. Virginia Energy Co., Inc. v. Mountain State Carbon, LLC*, 636 F.3d 101, 103 (4th Cir. 2011); *see Strawbridge v. Curtiss*, 3 Cranch 267, 7 U.S. 267 (1806). "When a plaintiff files in state court a civil action over which the federal district courts would have original jurisdiction based on diversity of citizenship, the defendant or defendants may remove the action to federal court, 28 U.S.C. § 1441(a), provided that no defendant 'is a citizen of the State in which such action is brought.'" *Caterpillar Inc. v. Lewis,* 519 U.S. 61, 68 (1996) (quoting 28 U.S.C. § 1441(b)).

It is undisputed that the amount in controversy exceeds $75,000. However, plaintiff asserts that complete diversity is lacking because "BAC and BANA are registered in the State of Maryland, have multiple bank locations and mortgage offices in the State of Maryland with licenses from the State of Maryland to operate in the State," and "used agents who are incorporated in Maryland such as Cohn, Goldberg & Deutsch, LLC." *Id.* at ¶ 10. Plaintiff also alleges that defendants are incorporated in Maryland. *Id.* at ¶ 11.

National banks are "corporate entities chartered not by any State, but by the Comptroller of the Currency of the U.S. Treasury." *Wachovia Bank v. Schmidt,* 546 U.S. 303, 306 (2006). Title 28 U.S.C. § 1348 provides: "All national banking associations shall, for the purposes of all other actions by or against them, be deemed citizens of the States in which they are respectively located." The Supreme Court has rejected has expressly rejected the view that § 1348 conveys citizenship on a national bank in every state in which it maintains banking operations. *Wachovia Bank v. Schmidt*, 546 U.S. 303, 308, 319 (2006). Rather, a national banking association is "located in," and thus a citizen of, the state in which its main office is located. *See id. at* 318

(holding that, under § 1348, a national bank is located "in the State designated in its articles of association as its main office"); *Rouse v. Wachovia Mortgage, FSB*, No. 12-55278, 2014 WL 1243869, at *1 (9th Cir. Mar. 27, 2014) ("[U]nder § 1348, a national bank is 'located' only in the state designated as its main office."); *Wells Fargo Bank, N.A. v. WMR e-PIN, LLC*, 653 F.3d 702, 709 (8th Cir. 2011) ("[P]ursuant to § 1348, a national bank is a citizen only of the state in which its main office is located."); *Hicklin Eng'g L.C. v. Bartell,* 439 F.3d 346, 348 (7th Cir. 2006) ("*Wachovia Bank* held that national banks are citizens only of the states in which their main offices are located . . . .").

Here, BANA, a national bank, has listed North Carolina as the location of its main office. *See* List of National Banks Active as of 7/31/13 (Notice of Removal Exh. C, ECF 1-1); *see also Ramos v. Bank of America, N.A.*, No. DKC-11-3022, 2011 WL 5574023, at *1 (D. Md. Nov. 15, 2011) ("Bank of America's main office is located in North Carolina").  Therefore, BANA is a citizen of North Carolina.

As to BAC, for purposes of diversity jurisdiction, a corporation's citizenship is derived from its state of incorporation and principal place of business. 28 U.S.C. § 1332(c)(1). BAC is a Delaware corporation with its principal place of business in North Carolina. ECF 1 at ¶ 20. Accordingly, BAC is a citizen of both Delaware and North Carolina.

Given that no defendant is a citizen of Maryland, I am satisfied that complete diversity of citizenship exists between the parties.

## C.  Federal Question and Supplemental Jurisdiction

Congress has authorized the federal district courts to exercise original jurisdiction in "all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. §

1331.  The Supreme Court has observed that "[t]here is no 'single, precise definition'" of the "concept" of federal question jurisdiction.  *Merrell Dow Pharm. Inc. v. Thompson,* 478 U.S. 804, 808, 106 S. Ct. 3229 (1986) (citation omitted).  "'[T]he phrase "arising under" masks a welter of issues regarding the interrelation of federal and State authority and the proper management of the federal judicial system.'"  *Id.* (citation omitted).  "Most directly, a case arises under federal law when federal law creates the cause of action asserted."  *Gunn v. Minton,* ── U.S. ──, 133 S. Ct. 1059, 1064 (2013); *see Franchise Tax Bd. of Cal. v. Const. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 9 (1983).

The Complaint raises several issues under federal law, including claims that defendants violated RESPA, TILA, and the FDCPA.  As the Supreme Court has noted, "there is no serious debate that a federally created claim for relief is generally a sufficient condition for federal-question jurisdiction," because in that case "federal law creates the right of action and provides the rules of decision."  *Mims v. Arrow Fin. Servs., LLC*, --- U.S. ----, 132 S. Ct. 740, 748 (2012). (internal citations and quotation marks omitted). Therefore, removal of plaintiff's federal law claims was also properly based on this Court's original jurisdiction.

As to plaintiff's remaining claims, 28 U.S.C. § 1367(a) grants district courts "supplemental jurisdiction over all other claims that are so related to claims in the action within [the courts'] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  Claims form part of the same case or controversy if they "derive from a common nucleus of operative fact," such that a plaintiff would "ordinarily be expected to try them all in one judicial proceeding," regardless of their federal or state

character.  *Issac v. North Carolina Dept. of Transp.,* 192 F. App'x 197, 199 (4th Cir.2006) (quoting *United Mine Workers of Am. v. Gibbs,* 383 U.S. 715, 725 (1966)).

Nevertheless, supplemental jurisdiction is discretionary, and a court may decline to exercise it for a variety of reasons. *See* 28 U.S.C. § 1367(c) (enumerating bases for declining to exercise supplemental jurisdiction).  These reasons include the fact that a state law claim "raises a novel or complex issue of State law," § 1367(c) (1); that the state law "claim substantially predominates over the claim or claims over which the district court has original jurisdiction," § 1367(c)(2); that the "district court has dismissed all claims over which it has original jurisdiction," § 1367(c)(3); and "in exceptional circumstances, there are other compelling reasons for declining jurisdiction."  § 1367(c)(4).

In this case, plaintiff's state law claims derive from the same nucleus of operative fact as the federal law claims, such that a plaintiff would ordinarily be expected to try them in one proceeding.  Plaintiff asserts that remand is warranted because his claims raise a "novel or complex" issue of state law, and his state law claims "substantially predominate" over his federal law claims.  Compl. ¶ 7.  Yet, plaintiff does not allege with any specificity which, if any, of the claims raise novel or complex issues of State law, and it is clear to this Court that they do not. Further, the State law claims do not "substantially predominate" over the federal claims "in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought."  *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966).  Thus, supplemental jurisdiction over plaintiff's state law claims is proper.

Accordingly, I will deny plaintiff's motion for remand.

**Conclusion**

For the foregoing reasons, defendants' motion to dismiss is granted, and plaintiff's motion for remand is denied.  With respect to the dismissal of claims with prejudice, it is obvious that amendment of plaintiff's factual allegations or legal claims would be futile.  Under these circumstances, it is not appropriate to allow a further opportunity to amend the complaint.  As to those claims dismissed without prejudice, plaintiff will be granted leave to amend, to remedy the deficiencies identified in this Memorandum Opinion.

A separate Order follows, consistent with this Memorandum Opinion.


Date: August 1, 2014                              _____/s/_____

                                                  Ellen Lipton Hollander
                                                  United States District Judge